**Jamie Lynne Mosby WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–07–00296–CR, 01–07–00297–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 11, 2009.

Rehearing Overruled June 11, 2009.

Discretionary Review Refused Sept. 30, 2009.

Cary M. Faden, Attorney at Law, Sugar Land, TX, for Appellant.

Kristen Moore, John J. Harrity III, Assistant District Attorney, John F. Healey Jr., Fort Bend County District Attorneys Office, Richmond, TX, for Appellee.

Panel consists of Justices ALCALA, HANKS and NUCHIA.*

## OPINION ON REHEARING

GEORGE C. HANKS, JR., Justice.

Appellant, Jamie Lynne Mosby Williams, has moved for rehearing of the Court's opinion of February 12, 2009. After due consideration, the Court denies appellant's motion. However, the Court sua sponte withdraws its judgment and opinion of February 12, 2009 and issues this opinion and judgment in their stead.

A jury found appellant guilty of capital murder and guilty of serious bodily injury to a child by omission. Punishment for both offenses was assessed at life imprisonment.

On appeal, appellant challenges her conviction for capital murder by arguing that (1) the evidence presented at trial was legally and factually insufficient to support

her conviction for that offense, and (2) the trial court erred by not including an instruction to the jury on the lesser-included offense of serious bodily injury to a child. Appellant challenges her conviction for serious bodily injury to a child by omission by arguing that (1) the evidence presented at trial was legally and factually insufficient to support her conviction for that offense and (2) her right to be free from double jeopardy was violated when she was tried for both capital murder and serious bodily injury to a child by omission, because the latter is a lesser included offense of the former. Appellant further challenges both convictions by arguing that the trial court erred in admitting autopsy photographs and in excluding her expert's testimony during the guilt/innocence stage.

We affirm.

## Background

Appellant and her husband, DeMario Williams, lived with appellant's two-year-old son, Joivonni Viverette,[1] in Missouri City, Texas. On August 6th, 2005, appellant's neighbor, Christian Harris, saw Joivonni playing in appellant's front yard while appellant and DeMario were preparing to cut the grass. At approximately 10:00 p.m., appellant and DeMario brought Joivonni to Christian's garage, where Christian and several friends were listening to music. Witnesses testified that Joivonni appeared to be unconscious, and at least one witness testified that the child was not breathing. Several people at Christian's house told appellant that Joivonni needed medical attention and offered to call an ambulance or drive them to the

---

* Justice Sam Nuchia, who retired from the First Court of Appeals on January 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on June 18, 2008.

1. It is unclear from the record whether DeMario was Joivonni's father.

hospital. Appellant declined the offer, explaining that they would call the ambulance themselves, and took Joivonni back to their house.

At around eleven o'clock the next morning, paramedic Terry White arrived at appellant's house after receiving a call that a two-year-old child had suffered cardiac arrest. White testified that when he found Joivonni, the child was not breathing, had no pulse, and exhibited rigor mortis, indicating that he had been dead for at least 12 hours. White also stated that the child was covered in cuts, bruises, and puncture wounds at different stages of healing. White testified that DeMario told him that the child had fallen in the tub and down the stairs, and had been unconscious at one point, but emergency help was not sought because the child appeared to be "okay" after CPR was performed. White believed that abuse was involved and contacted the police.

Police initially questioned appellant and DeMario concerning Joivonni's injuries. Both reiterated that Joivonni had fallen in the bathtub. However, appellant and DeMario were interviewed a second time after autopsy results showed that Joivonni had multiple new and old injuries and severe head injuries. After the second set of interviews did not produce a more plausible explanation for the child's injuries, police contacted the district attorney's office. A grand jury indicted appellant for capital murder for intentionally and knowingly causing Joivonni's death by use of a deadly weapon. Appellant was also charged in a separate indictment for serious bodily injury to a child by omission. Police went to appellant's house with an arrest warrant and eventually found appellant and DeMario hiding in the attic.

At trial, appellant moved to require the State to elect between the indictments for capital murder and serious bodily injury by omission. She also requested a jury instruction on injury to a child as a lesser-included offense of capital murder. The trial court denied appellant's requests, and the jury convicted appellant as charged in both indictments. Because the State did not seek the death penalty, punishment for capital murder was automatically assessed at life imprisonment. Punishment for injury to a child was also assessed at life imprisonment.

## Double Jeopardy

■■■ As part of her appeal of her conviction for serious bodily injury to a child by omission, appellant contends that the trial court violated her constitutional right against double jeopardy by allowing both the indictment for serious bodily injury to a child by omission and the indictment for capital murder to proceed to trial at the same time. Appellant argues that, since serious bodily injury to a child by omission is a lesser-included offense of capital murder, the trial court's failure to require the State to elect between the two indictments subjected her to multiple punishments for the same conduct in violation of the Double Jeopardy Clause. We disagree.[2]

■■■ The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. CONST. amend. V. Gen-

2. "A multiple punishments claim [under the Double Jeopardy Clause] can arise in two contexts: (1) the lesser-included offense context, in which the same conduct is punished twice; once for the basic conduct, and a second time for that same conduct plus more[,] and (2) punishing the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once[.]" *Langs v. State*, 183 S.W.3d 680, 685 (Tex.Crim.App.2006).

erally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim.App.1990) (op. on reh'g). However, "the Double Jeopardy Clause does not prohibit a legislature from authorizing cumulative punishments under two statutes that proscribe the same conduct[.]" *Mauro v. State*, 221 S.W.3d 896, 903 (Tex.App.-Beaumont 2007, no pet.). Where a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct, a prosecutor may seek, and the trial court or jury may impose, cumulative punishment under such statutes in a single trial. *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *Mayhew v. State*, 271 S.W.3d 294, 300 (Tex.App.-Beaumont 2008, no pet.). "A defendant [only] suffers multiple punishments in violation of the Double Jeopardy Clause when he is convicted of more offenses than the legislature intended." *Ervin v. State*, 991 S.W.2d 804, 807 (Tex.Crim.App.1999).

The Legislature's intent to allow multiple punishments under the statutes at issue in this case is clear. Section 22.04(h) of the Texas Penal Code creating the offense of serious bodily injury to a child by omission states that "[a] person who is subject to prosecution under both this section and another section of this code may be prosecuted under either or both sections." TEX. PENAL CODE ANN. § 22.04(h) (Vernon Supp. 2008). As Texas courts have held, "[t]his statute [Section 22.04] plainly authorizes multiple punishments

when a defendant's conduct violates both section 22.04 and another penal code section." *Johnson v. State*, 208 S.W.3d 478, 511 (Tex.App.-Austin 2006, pet. ref'd.); *see also Mayhew*, 271 S.W.3d at 301. Since the provision of the Penal Code that proscribes capital murder of a child[3] is not found in Section 22.04 of the Texas Penal Code, we hold that the Legislature has expressly authorized multiple punishments for appellant's conduct and the trial court's decision to allow both indictments to proceed to trial at the same time did not violate appellant's constitutional protection against double jeopardy.

## Charge Error

■ Appellant challenges her conviction for capital murder by arguing that the trial court erred by not charging the jury on the offense of injury to a child by intentional, knowing, or reckless act.

■ We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *See Guzman v. State*, 188 S.W.3d 185, 188 (Tex.Crim.App.2006). The first step is to determine whether an offense is a lesser-included offense of the alleged offense. *Hall v. State*, 225 S.W.3d 524, 535 (Tex.Crim.App.2007). The determination of whether the offense for which an instruction was requested is a lesser-included offense of the alleged offense is a question of law and does not depend on the evidence to be produced at the trial. *Id.* at 535. The second step is to determine if there is some evidence that would permit a rational jury to find that the defendant is guilty of the lesser offense but not guilty of the greater. *Id.* at 536; *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App. 1993). If more than a scintilla of evidence

---

**3.** TEX. PENAL CODE ANN. § 19.03(a)(8) (Vernon Supp. 2008) (defining capital murder as intentionally or knowingly causing the death of an individual under six years of age).

from any source raises the issue that the defendant is guilty only of the lesser-included offense, the instruction must be submitted. *Forest v. State,* 989 S.W.2d 365, 367 (Tex.Crim.App.1999).

An appellant must satisfy both prongs to be entitled to a lesser-included offense instruction. *Bignall v. State,* 887 S.W.2d 21, 23 (Tex.Crim.App.1994). If there is no evidence that appellant is guilty only of the lesser offense, it is unnecessary to determine whether the lesser offense is a lesser-included offense.

■ In reviewing the evidence, we first note the Court of Criminal Appeals' admonition that, "if a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing that he is guilty only of a lesser-included offense, then a charge on a lesser-included offense is not required." *Bignall,* 887 S.W.2d at 24. There must be affirmative evidence in the record raising the lesser offense before an instruction is warranted. *Id.*

Here, there were no witnesses to the alleged offense and appellant repeatedly denied committing any act that harmed Joivonni, and denied any knowledge of DeMario harming the child. Instead, both appellant and DeMario gave police and emergency personnel various accounts of how Joivonni might have sustained his injuries—including slipping in the bathtub, falling from the ledge of the bathtub, falling down the stairs and/or an unexplained accident while appellant and DeMario were outside mowing the lawn. Appellant's testimony that she did not commit any offense cannot support a lesser-included offense instruction. *See, e.g., Lofton v. State,* 45 S.W.3d 649, 652 (Tex.Crim.App. 2001); *Martin v. State,* 246 S.W.3d 246, 267 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Appellant's evidence, if believed by the jurors, would have supported only an acquittal, not a conviction for the lesser included offense of injury to a child.

Despite her denials that she committed any act that caused Joivonni's injuries, appellant now argues on appeal that the medical evidence presented at trial by the State is sufficient to allow a jury to find that if appellant were guilty, "she was guilty *only* of acting recklessly" with the intent to cause serious injury. We disagree. In this case, the medical testimony regarding the extensive nature of Joivonni's injuries and the manner in which they were inflicted does not constitute more than a scintilla of evidence that Appellant was merely reckless and that she only intended to cause serious injury and not death to Joivonni.

The medical examiner who performed the autopsy on Joivonni's body opined that the fatal head injuries Joivonni sustained could only have occurred by a "shaking-impact injury," where the two-year-old child's head was shaken back and forth with such extreme force that parts of the brain were moving in different directions and the eyes were hemorrhaging, and then his head was hit with or against something. The medical examiner specifically stated that the type of brain injuries Joivonni sustained were not from a simple fall from a bathtub or even down stairs, but were instead the type sustained when a child is shaken very hard and then thrown into an object such as a wall or a bathtub at a high speed. Additionally, the medical examiner testified that the person who inflicted these injuries must have intended to cause the injuries. Because appellant denied harming Joivonni in any way and the medical evidence shows conduct that could only have been done intentionally or knowingly, nothing in the record would support a jury finding of reckless serious bodily injury.

Similarly, appellant contends on appeal that the medical evidence presented at trial by the State is sufficient to allow a jury to find that if appellant were guilty, she was guilty only of intentionally or knowingly causing serious bodily injury, as opposed to capital murder. As shown above, the medical evidence shows only that appellant acted intentionally or knowingly to cause the death of the child, and thus the only question remaining is whether there is any evidence that appellant intentionally or knowingly intended to cause serious bodily injury but not death. Our review of the record shows that the medical examiner testified that the injuries to the child satisfy the definition of serious bodily injury and also that appellant caused the death of the child. The definition of serious bodily injury includes death. Tex. Penal Code Ann. § 1.07(a)(46) (Vernon 2003). However, to be entitled to an instruction on the lesser offense, the evidence must show guilt for only the lesser-included offense. *See Bignall,* 887 S.W.2d at 23. Although death is included in the definition of serious bodily injury, no evidence shows that appellant was guilty of the lesser offense of acting with intent to cause *only* serious bodily injury and not death. In other words, proof that appellant intentionally or knowingly intended to cause the death of the child will as a matter of law always establish that appellant intentionally or knowingly intended to cause serious bodily injury to the child, and therefore a lesser-included offense instruction should not be given under these circumstances. *See id.*

We conclude that there is not more than a scintilla of evidence that appellant was guilty only of the lesser offense of injury to a child and not the greater offense of capital murder. Accordingly, we hold that appellant was not entitled to an instruction on the lesser-included offense of serious bodily injury to a child by intentional, knowing or reckless act, and the trial court did not err in rejecting appellant's request for this instruction.

## Legal and Factual Sufficiency

Appellant also contends that the evidence is legally and factually insufficient to prove that she is guilty of either capital murder or serious bodily injury to a child by omission.

In our legal-sufficiency review, we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). In our factual-sufficiency review, we view all of the evidence in a neutral light. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997). We will set aside the verdict only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the proof of guilt is against the great weight and preponderance of the evidence. *Johnson,* 23 S.W.3d at 11. Under the first prong of *Johnson,* we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006). Under the second prong of *Johnson,* we also cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* at 415, 417. Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In our factual-sufficiency review, we must also discuss the evidence that, according to the appel-

lant, most undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim.App.2003).

The fact-finder alone determines the weight to be given contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. *Cain*, 958 S.W.2d at 408–09. As the determiner of the credibility of the witnesses, the fact-finder may choose to believe all, some, or none of the testimony presented. *Id.* at 407 n. 5; *see also Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App.2008).

**Capital Murder**

■■■ As charged, to prove that appellant committed the offense of capital murder, the State had the burden of proving beyond a reasonable doubt that appellant intentionally or knowingly caused the death of an individual under six years of age. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(8). The jury charge indicated that the jury could convict appellant if it found she either acted by her own conduct or as a party to DeMario or both.

Appellant argues that the evidence against her is "entirely circumstantial" because no one actually saw her harm the child, and because she was not the only person with access to Joivonni at the time he was injured. Appellant points to the medical examiner's statements that brain injuries may sometimes result from falls and his admission that he could not identify the object or objects which might have been used to injure Joivonni. Accordingly, appellant contends that the evidence is legally and factually insufficient to sustain her conviction for capital murder. We disagree.

■■■■ Legal and factual sufficiency do not require that each fact point directly and independently to the defendant's guilt;

rather, the verdict will withstand a sufficiency challenge as long as the combined and cumulative force of all the circumstances permits the conclusion that the jury was rationally justified in finding the defendant guilty of each element of the crime beyond a reasonable doubt. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim.App.1993); *see also Sonnier v. State*, 913 S.W.2d 511, 514–16 (Tex.Crim.App. 1995). Further, circumstantial evidence can be sufficient to prove culpable mental state; in these types of injury to a child cases, there is rarely direct evidence of exactly how the child's injuries occurred, which is why the culpable mental state may be inferred from circumstantial evidence. *See Ledesma v. State*, 677 S.W.2d 529, 531 (Tex.Crim.App.1984).

Here, the medical examiner's testimony shows that the head injuries which caused Joivonni's death were extensive, could not have been inflicted in any of the several ways appellant offered as explanation, and must have been sustained during an episode of violent shaking and physical abuse by an adult. The evidence also shows that appellant admitted being alone with Joivonni at several periods during the time the medical examiner testified that Joivonni sustained the injuries that caused his death. Finally, the medical examiner testified that the person who inflicted these injuries would have known that he or she was seriously harming Joivonni and must have intended to do so. Accordingly, we conclude that, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of capital murder beyond a reasonable doubt. *See Johnson*, 23 S.W.3d at 11. Similarly, the evidence, viewed in a neutral light, is not so weak that the verdict is clearly wrong and manifestly unjust and is, thus, factually sufficient to sustain the jury's finding of guilt on the charge of capital murder. *See id.*

### Serious Bodily Injury to a Child by Omission

To prove that appellant committed the offense of serious bodily injury to a child by omission, the State had the burden of proving beyond a reasonable doubt that appellant, by her omission, knowingly caused serious bodily injury to Joivonni by failing to seek and provide timely and necessary medical attention to Joivonni, and that appellant had a legal duty to act. *See* TEX. PENAL CODE ANN. § 22.04(a), (b)(1). The jury charge indicated that the jury could convict appellant if it found she either acted by her own conduct or as a party to DeMario or both.

Injury to a child by omission is a "result of conduct" offense. *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex.Crim.App. 1985). This means that the culpable mental state relates not to the nature or circumstances surrounding the charged conduct, but to the *result* of that conduct. *Thompson v. State*, 227 S.W.3d 153, 159 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). In other words, the accused must have acted with the requisite culpable mental state to effect the result. *Id.*

As with her conviction for capital murder, Appellant claims that the evidence is legally insufficient to support her conviction for serious bodily injury by omission because the evidence against her is entirely circumstantial, no witnesses saw her shake or strike Joivonni, and she did not have sole access to the child at the time his injuries were sustained. She also asserts that the record shows that she made consistent statements regarding the cause of Joivonni's injuries. Therefore, she claims, no rational jury could have found the elements of serious bodily injury to child by omission beyond a reasonable doubt. We disagree.

Here, the medical examiner testified that—immediately after Joivonni sustained his injuries—he would not have been acting normally and he would have "immediately [had] symptoms and signs that anyone could notice that something's wrong with the kid." The medical examiner also testified that, without medical treatment, Joivonni was certain to die from his injuries. Witnesses testified that appellant brought an unconscious Joivonni to Christian's house and was told that the child needed medical treatment, but instead she returned with the child to her house. The paramedic testified that he found Joivonni's bruised body, which exhibited rigor mortis, on the floor of appellant's house the following day; appellant was in the house. The paramedic also testified that he was told the child had slipped in the tub and/or fallen down the stairs, and had even lost consciousness at one point the prior evening, but that no medical treatment had been sought.

We conclude that, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of serious bodily injury to a child by omission beyond a reasonable doubt. *Johnson*, 23 S.W.3d at 11. Therefore, there is legally sufficient evidence to support the jury's verdict that appellant caused serious bodily injury to Joivonni by omission.

We also conclude that the evidence is factually sufficient to support the jury's conviction. Appellant apparently relies on Christian's testimony that he saw Joivonni playing normally on the day of the incident and that Joivonni only had a small bruise on his arm when he was brought to Christian's house as evidence that negated whether appellant knew that Joivonni needed medical attention, and, therefore, knowingly caused his death by omission. However, Christian also stated that when Joivonni was brought to his house that

evening, he was unconscious. The medical examiner testified that it would be reasonable to assume that any period when Joivonni was acting normally would have occurred before he sustained his head injury. Additionally, another witness testified that Joivonni was covered in bruises when brought to Christian's house and not breathing, and that appellant was urged to call 911 or take Joivonni to the emergency room. Any conflict in the testimony concerning the severity, extent, and cause of Joivonni's injuries when brought to Christian's house was for the jury to resolve. *See Cain,* 958 S.W.2d at 408–09.[4]

We hold that the evidence, viewed in a neutral light, is not so weak that the verdict is clearly wrong and manifestly unjust and is, thus, factually sufficient to sustain the jury's finding of guilt on the charge of serious bodily injury to a child by omission.

### Admission of Autopsy Photograph

In her fourth point of error, appellant complains that the trial court erred in admitting an autopsy photograph. Appellant contends that the photograph was irrelevant, cumulative, and unfairly prejudicial. At trial, appellant only objected that State's exhibit 2TT was irrelevant and cumulative; therefore, we only consider her trial challenge to exhibit 2TT, and do not consider her argument that the photograph is unfairly prejudicial. *See Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim. App.2002) (point of error on appeal must comport with objection made at trial).

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App.2002). A trial court's ruling will not be reversed unless it falls outside the zone of reasonable disagreement. *Id.*

■ Relevant evidence is evidence having any tendency to make the existence of a fact that is of consequence to the outcome of the case more or less probable than it would be without the evidence. TEX. R. EVID. 401. In other words, evidence must satisfy two requirements in order to be relevant—materiality and probativeness. *Cruz v. State,* 122 S.W.3d 309, 312 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

■ Relevant evidence is generally admissible under Texas Rule of Evidence 402; however, the admission of potentially prejudicial evidence is governed by Rule 403. TEX. R. EVID. 402, 403. In determining whether potentially prejudicial evidence was properly admitted, the appropriate inquiry is not whether the evidence was more prejudicial than probative, but rather, whether the probative value was substantially outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence. *Resendiz v. State,* 112 S.W.3d 541, 545 (Tex.Crim.App.2003). In the balancing analysis, however, a presumption favors probative value over unfair prejudice or cumulative effect. *See Goldberg v. State,* 95 S.W.3d 345, 366 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd).

■ Appellant first argues that exhibit 2TT[5] is irrelevant because it is not

---

**4.** Appellant also points out that the medical examiner was unable to say with any medical certainty what object was used to inflict Joivonni's head injury, but did testify that a subdural hematoma could occur from a fall. However, appellant does not explain how uncertainty as to the cause of the child's initial injury is relevant to whether she failed to seek timely and necessary medical attention for the child once injured.

**5.** Exhibit 2TT was not individually admitted into evidence, but was contained on a compact disc that was presented to the jury.

probative of the manner in which Joivonni incurred his fatal injuries. Exhibit 2TT depicts various injuries to Joivonni's neck and the side of his head. The medical examiner who performed the autopsy on Joivonni's body stated that photographs of Joivonni's body before and during the autopsy would assist him in describing his findings to the jury. Generally, a photograph is admissible if verbal testimony as to matters depicted in the photographs is also admissible. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex.Crim.App.2007). In other words, if verbal testimony is relevant, photographs of the same are also relevant. *Id.* The medical examiner's testimony was material to the State's serious bodily injury to child by omission case because it is probative of the child's condition at the time appellant brought the child to Christian's house. The medical examiner's testimony was material to the State's capital murder case because it demonstrated the scope and extent of the child's injuries and the cause of death. We hold that the trial court did not abuse its discretion in determining that the photograph was relevant. *See* Tex. R. Evid. 401.

■ Next, appellant asserts that the probative value of exhibit 2TT is outweighed by the needless presentation of cumulative evidence. *See* Tex. R. Evid. 403. She appears to assert that the photograph was cumulative of State's exhibits 2RR and 2SS. However, exhibit 2TT is not cumulative of these exhibits, because exhibit 2TT shows injuries to Joivonni's neck and head from a side view, whereas exhibits 2RR and 2SS show injuries from a frontal view. Accordingly, we hold that the trial court did not abuse its discretion in deciding that the photograph's probative value was not substantially outweighed by the needless presentation of cumulative evidence.

**Exclusion of Expert Testimony**

■ In her final point of error, appellant contends that the trial court reversibly erred in excluding the psychiatric testimony of Dr. Ernest Kendrick during the guilt/innocence stage of trial. Appellant contends that she offered Dr. Kendrick's testimony to explain her decision-making process at the time of the offense. At trial, appellant argued that Dr. Kendrick's testimony is relevant because it went to her state of mind at the time the child needed medical attention at Christian's house. Appellant explained that she hired Dr. Kendrick to analyze the evidence and determine whether "the perception of the omission of treatment was a legitimate perception on [appellant's] part." She further expressed, "I'm offering it for the state of mind of [appellant] at the time to determine based upon the explanation[s] that she gave and the testimony of the other witnesses. Was it or is it a rational belief that medical care was necessary at that time?" From the context of the questioning, it appears that appellant was attempting to rebut the charge of serious bodily injury by omission by offering the testimony as evidence of whether she perceived that Joivonni needed medical attention when she brought him to Christian's house. Appellant does not explain how Dr. Kendrick's testimony would have been relevant to the capital murder case against her.

■ Even if the trial court abused its discretion in refusing to admit Dr. Kendrick's testimony, we conclude that such error would have been harmless. Any error in excluding the proffered evidence would be non-constitutional error under Rule 44.2(b). Accordingly, we must disregard the error and affirm if the error did not affect appellant's substantial rights. Tex. R. App. P 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). "A

substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King*, 953 S.W.2d at 271. "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

Examining the record as a whole, the evidence shows that, when appellant brought Joivonni to Christian's house, the child was unconscious—possibly not breathing or breathing with difficulty— and appellant was crying and screaming "[T]he baby wouldn't wake up." Bystanders told appellant that the child needed medical attention and even offered to take appellant and the child to the hospital. Appellant declined; one witness testified that appellant responded that she already had someone coming and another witness testified that appellant stated that she was going to go home and call 911. Given the weight of the testimony showing that appellant knew that Joivonni needed immediate medical attention, we hold that any error the trial court's committed in not admitting Dr. Kendrick's testimony was harmless and did not affect appellant's substantial rights.

## Conclusion

We affirm appellant's convictions for capital murder and serious bodily injury to a child by omission.