# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-12-00285-CR

**Nichole Turner, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT NO. D-1-DC-10-100052, THE HONORABLE JIM CORONADO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment dated April 30, 2014, substitute the following opinion and judgment in their place, and deny appellant's motion for rehearing.

A jury convicted appellant Nichole Turner of intentionally or knowingly causing serious bodily injury to her boyfriend's five-year-old son, *see* Tex. Penal Code § 22.04(a)(1), and sentenced her to 35 years in the Texas Department of Criminal Justice, *see id.* § 12.32. In three points of error on appeal, appellant asserts that the evidence is insufficient to support her conviction, the omission of a lesser-included-offense instruction in the jury charge caused her egregious harm, and the assistance rendered by her trial counsel was ineffective. The parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial. Accordingly, we will not

recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.4. Finding no reversible error, we affirm the trial court's judgment of conviction.

## DISCUSSION

### Sufficiency of the Evidence

In her first point of error, appellant asserts that the evidence is insufficient to support her conviction for injury to a child because it fails to connect her to the child's older injuries, fails to show she inflicted serious bodily injury on the child with the requisite mental state, and fails to establish that the child's head injuries were serious bodily injuries.

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

As charged in this case, a person commits the offense of injury to a child if she intentionally or knowingly causes serious bodily injury to a child fourteen years of age or younger.

2

*See* Tex. Penal Code § 22.04(a)(1). Injury to a child is a result-oriented offense, meaning that it requires a mental state that relates not to the specific conduct but to the result of that conduct. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The State must prove that a defendant caused a child's serious bodily injury with the requisite criminal intent. *Id.* "Serious bodily injury" includes bodily injury that creates a substantial risk of death or that causes death. *See* Tex. Penal Code § 1.07(a)(46). A person acts "intentionally" with respect to a result of her conduct when it is her conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts "knowingly" with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result. *Id.* § 6.03(b). The State may prove a defendant's criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Intent can be inferred from the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck).

On the morning of Saturday, April 10, 2012, the dead body of five-year-old J.S. was discovered in a yard in appellant's neighborhood (approximately one mile from her apartment) three hours after appellant called authorities to report him missing. The evidence at trial showed that appellant had been involved in a relationship with J.S.'s father, with whom she had a seven-month-old child. The couple had been living together in an apartment along with their three children: their infant son, appellant's five-year-old daughter from a previous relationship, and J.S. However, approximately one month before J.S.'s death, his father moved out of the apartment,

3

basically abandoning the family. Although appellant was not J.S.'s biological mother, he remained in her care. The evidence showed that appellant was the sole caregiver for J.S. during the month preceding his death. The evidence also reflected that appellant was the only adult who had any contact with J.S. from after school on Wednesday, April 7, through the time his body was found on the morning of Saturday, April 10.

The medical evidence at trial showed that J.S. was, essentially, beaten to death. Dr. David Dolinak, the chief medical examiner for Travis County, performed the autopsy on J.S. He determined that the cause of J.S.'s death was "blunt force injuries" and the manner of death was "homicide." He explained that a blunt force injury occurs "when an object impacts the body or the body impacts some object and it causes damage or injury to the body, whether it's a bruise, a broken bone, [or] tearing of tissue." Dr. Dolinak testified about numerous injuries inflicted on J.S., including "at least 59" external bruises. He indicated that the condition of J.S.'s body "stood out" to him because J.S. had a large number of bruises distributed all over his body, including his head, chest, abdomen, back, buttocks, arms, and legs. J.S.'s internal injuries included:

- a fractured left collarbone (healing improperly because it was not set),

- internal hemorrhaging in his abdomen (Dr. Dolinak removed approximately 200 milliliters of blood, which he indicated was a significant amount given J.S.'s size),

- large tears in the mesentery (the layer of fatty tissue surrounding the intestines),

- bleeding behind the intestines (Dr. Dolinak testified that he was unable to measure this volume of blood as he had the blood in the abdominal cavity, but there was "a significant additional amount of blood in the tissues"),

- "a big hole" in the large intestine along with bruising of the intestine itself in different areas,

4

- bruising and tears in the wall of the small intestine,

- bruising under the surface of the scalp,

- bleeding on the surface of the brain,

- small areas of hemorrhage in the brain itself, and

- hemorrhaging in the tissue around the buttocks, thighs, and lower back (Dr. Dolinak testified that the most severe external bruising was around the buttocks and thighs).

Dr. Dolinak testified that the bruises on J.S.'s body were "fatal in and of themselves" and contributed to the internal bleeding. He further stated the injuries were non-accidental and were consistent with someone repeatedly hitting J.S. with a blunt object. He opined that J.S. sustained these injuries from multiple impacts and not during a one-time event. Based on the legal definition of "serious bodily injury" provided by the prosecutor, Dr. Dolinak classified J.S.'s injuries as "serious bodily injury." He also testified that these injuries could have been caused by a hand or a shoe, though he did not limit causation to these blunt objects.

In addition to the "recent injuries" noted above, Dr. Dolinak testified about finding scar tissue in several areas of J.S.'s body. He found scar tissue around the healing fracture of the left collarbone, in the mesentery, in the retroperitoneum (the tissue deep in the abdomen), and in both the left and right buttocks areas. The doctor testified that the scar tissue in these areas was "a couple of weeks" old. He also found evidence of healing in the right side of the scalp and in the small intestine. The scar tissue in these areas was "two, three, maybe four days" old. In addition, Dr. Dolinak testified that J.S.'s aorta had been severed from its attachment to the backbone, though the aorta itself was not torn. Scar tissue in that area indicated this happened during a previous

5

abdominal injury. From the combination of healing and non-healing tissue in J.S.'s body, Dr. Dolinak concluded that J.S. suffered multiple impacts over a period of time. He testified that J.S.'s injuries were consistent with being repeatedly abused by someone.

Appellant first maintains that the evidence is insufficient because it fails to connect her to the serious bodily injuries—"the abdominal injuries isolated as the cause of death and the broken shoulder"—because they occurred two or three weeks before J.S.'s death and the record fails to demonstrate that appellant had sole access to J.S. at that time. Appellant's contention, however, is based on several incorrect assumptions. First, these injuries are not "the serious bodily injuries *necessary* to support her conviction" (emphasis added). While the evidence reflects that the abdominal injuries and collarbone injury were serious bodily injuries, they are not the *only* serious bodily injuries J.S. had sustained. Dr. Dolinak's testimony did not limit his serious-bodily-injury classification to only J.S.'s abdominal injuries and his broken collarbone. Rather, he classified the injuries "in [J.S.]'s body" as serious bodily injury. Based on the testimony the medical examiner presented to the jury, these injuries also included J.S.'s head injuries (the bruising under the surface of the scalp, the bleeding on the surface of the brain, and the bleeding in the brain itself) as well as injuries to J.S.'s back, buttocks, and legs.

Second, the evidence did not isolate the abdominal injuries as the cause of death. Rather, the medical examiner's testimony established that the bruising injuries throughout J.S.'s body (which, again, would include the head injuries as well as the tissue injuries) were "fatal in and of themselves" in addition to contributing to the internal bleeding J.S. suffered. Dr. Dolinak

6

concluded that J.S. died as a result of blunt force injuries, but did not limit his finding to blunt force abdominal injuries.

Third, contrary to appellant's claim, the evidence does not show that the fatal abdominal injuries occurred two to three weeks before J.S. died. Rather, the evidence showed that J.S. suffered previous *additional* injuries several weeks prior to his death, as shown by the scar tissue in the mesentery, the retroperitoneum, and around the detached aorta. However, it is clear from the evidence that J.S. also sustained recent abdominal injuries that contributed to his death. Dr. Dolinak testified that the bruising and tears in the small intestine happened within days of J.S.'s death. More importantly, he testified that the blood in J.S.'s abdominal cavity, more than two full cups, resulted primarily from large tears in the mesentery and looked "very fresh." The doctor's testimony also indicated that after sustaining these abdominal injuries, J.S. would have been bleeding to death internally and would not have had the endurance to walk a mile (the distance from appellant's apartment to the location where J.S.'s body was found). It would logically follow that J.S. would not be able to function and carry on daily activities, such as going to school, for several weeks if he was bleeding to death internally. Furthermore, the evidence reflected that J.S. suffered symptoms consistent with his abdominal injuries starting the Wednesday night before his death. According to Dr. Dolinak, symptoms from his abdominal injuries would have started within a few hours—not weeks—after the injuries were sustained.

Based on her own admission that she disciplined J.S. after school on the Tuesday before his body was found and the fact that school officials failed to notice J.S.'s broken collarbone for several weeks, appellant maintains that "the seriousness of the injuries was not so obvious that

7

one causing it during discipline would be reasonably certain that conduct would result in serious bodily injury." Thus, appellant next contends that the evidence was insufficient because it failed to demonstrate that she caused serious bodily injury with the requisite mental state. However, appellant's contention is again based on incorrect assumptions. She assumes that the fatal injuries were inflicted either several weeks before his death (an assumption not supported by the evidence, as we noted above) and the school officials failed to detect them or that the injuries were inflicted during the "whooping" appellant admits she gave J.S. on Tuesday. However, the evidence in the record supports the inference that the fatal injuries were inflicted on J.S. sometime *after* the Tuesday discipline episode. Dr. Dolinak testified that J.S. would have experienced the onset of symptoms within hours of the abdominal injuries being inflicted. The evidence reflected that J.S. began vomiting Wednesday night and was absent from school on Thursday and Friday because he was ill with diarrhea and continued vomiting. Further, while it may be true that J.S.'s shoulder injury went undetected by school authorities, Dr. Dolinak testified that J.S.'s abdominal injuries—"some of the scar tissue around his intestines and mesentery"—would have probably gone undetected by school officials "unless [J.S.] was having symptoms from it." The fact that the school officials did not detect J.S.'s injuries or observe his symptoms further supports the conclusion that the fatal injuries were inflicted after J.S. left school on Wednesday—the last time he had contact with any adult other than appellant. Also, the fact that appellant admitted only to "whooping" J.S. with a belt and her hand on Tuesday does not exclude the possibility that she later inflicted more serious (and fatal) injuries on the child.

Appellant asserts in her brief that other than her admission to striking J.S. during discipline, "[n]o other evidence showed appellant mistreated the child." However, in cases involving injury to a child, there is rarely direct evidence of exactly how the child's injuries occurred. *Williams v. State*, 294 S.W.3d 674, 683 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Instead, we look to rational inferences from circumstantial evidence to determine whether the State met its burden. *Id.* The weekend before his death, J.S. spent Easter weekend with appellant's parents. Neither of them noticed any marks, bruises, or injuries on the child. Appellant was the sole adult with J.S. during the times the child sustained extremely severe and fatal injuries. J.S. did not simply have bruises—although he did have those in great quantity distributed all over his body—he had massive internal injuries resulting from blunt force trauma. He had significant injuries to several vital organs—large tears in his mesentery, a big hole in his large intestine, bruising in his large intestine, bruising in his small intestine, tears in the wall of his small intestine, and bleeding in his brain—as well as extensive bleeding in his abdomen (predominantly from the tears in his mesentery), in the tissue behind the intestines, under the surface of his scalp, on the surface of his brain, and in the tissue around his buttocks, thighs, and lower back. J.S. died as a result of the multiple blunt force injuries all over his five-year-old, 38-pound body.

Appellant's admission to disciplining J.S. does not render the evidence insufficient to prove the requisite mental state. The jury could infer appellant's intent or knowledge from the evidence of the injuries inflicted on J.S., both the severity and number. *See Patrick*, 906 S.W.2d at 487; *see also Moore v. State*, 969 S.W.2d 4, 16 n.5 (Tex. Crim. App. 1998) (Keller, J. concurring and dissenting) ("The extent of a victim's injuries is, of course, a reflection of the strength of a

defendant's attack[.]"). The method of producing the injuries also supports the inference that appellant intentionally or knowingly inflicted serious bodily injury on J.S. *See Patrick*, 906 S.W.2d at 487. Dr. Dolinak testified that all of J.S.'s injuries were consistent with repeated blows with a blunt object and that the abdominal injuries resulted from compression-type forces strong enough to tear tissues on the inside. Further, the jury could also infer appellant's intent and knowledge from the size and strength differential between appellant and J.S. *See id.*; *Duren*, 87 S.W.3d at 724. The jury heard testimony regarding J.S.'s height and weight (45 inches and 38 pounds) and saw photographs of him on Easter Sunday, less than a week before he was found dead. When appellant, an adult woman, testified at trial, the jury could see the disparity between appellant and J.S.[1] The record amply demonstrates appellant's intent or knowledge and supports the jury's conclusion that J.S. suffered from violent acts of abuse, not "harsh or misguided discipline" as appellant suggests.

Finally, appellant avers that the evidence is insufficient because it failed to establish that J.S.'s head injuries constituted serious bodily injury. This contention is based on Dr. Dolinak's failure to specifically mention J.S.'s head injuries when classifying J.S.'s injuries as "serious bodily injury." As we noted above, however, Dr. Dolinak classified the injuries "in [J.S.]'s body" as serious bodily injury. This would include J.S.'s head injuries. And again, the doctor concluded that J.S. died as a result of blunt force injuries. While appellant wants to restrict those blunt force injuries to J.S.'s abdominal injuries, no such limitation is demonstrated by the evidence presented at trial. Moreover, although we disagree with appellant's conclusion that the evidence fails to establish that

---

[1] We also note that during her 911 call to report J.S. missing, appellant described J.S. as "really frail," "skinny," and "not that tall." Thus, the evidence demonstrates that appellant was aware of the size and strength disparity between them.

10

J.S.'s head injuries were serious bodily injuries, the lack of such evidence would not render the evidence insufficient to support appellant's conviction. Even excluding the evidence of J.S.'s head injuries, the record contains sufficient evidence of other serious bodily injuries inflicted on J.S. by appellant.

Appellant's arguments focus on certain pieces of evidence present or lacking in the record and how their presence or absence supports her defensive theory. In assessing the legal sufficiency of the evidence, however, we must consider all the evidence in the light most favorable to the verdict. *See Anderson*, 416 S.W.3d at 888. Based on the evidence presented at trial and the reasonable inferences therefrom, we conclude that the jury could have rationally concluded that J.S. suffered serious bodily injury at the hands of appellant as alleged in the indictment.[2] Accordingly, we hold that the evidence is sufficient to support appellant's conviction for injury to a child. *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13. We overrule appellant's first point of error.

**Lesser-Included-Offense Instruction**

In her second point of error, appellant argues that the omission of an instruction in the jury charge on the lesser-included offense of reckless injury to a child caused her egregious harm.[3]

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal.

---

[2] Once again, because the parties are familiar with the evidence adduced a trial, we do not recite all of the evidence supporting appellant's conviction in our analysis. Rather, we limit our recitation to the evidence that is relevant to appellant's particular sufficiency challenges.

[3] Appellant's attorney neither objected to the jury charge on this basis nor requested an instruction on reckless injury to a child.

*Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Determining whether a defendant is entitled to a lesser-included-offense instruction requires a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535. If so, we must decide whether the admitted evidence supports the instruction. *Goad*, 354 S.W.3d at 446; *Rice*, 333 S.W.3d at 144.

Reckless injury to a child is a lesser-included offense of injury to a child as charged in the indictment here, *see Wortham v. State*, 412 S.W.3d 552, 554 (Tex. Crim. App. 2013) (reckless injury to child by act is lesser-included offense of knowing or intentional injury to child by act), so we proceed to the second prong. Under this prong, we must determine if there is some evidence in the record that would permit a jury to rationally find that, if appellant is guilty, she is guilty only of the lesser-included offense. *See Rice*, 333 S.W.3d at 145; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536); *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008). We consider all of the evidence admitted at trial, not just the evidence presented by the defendant. *Goad*, 354 S.W.3d at 446; *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). We may not consider the credibility of the evidence or whether it

12

conflicts with other evidence or is controverted. *Goad*, 354 S.W.3d at 446–47. However, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed*, 351 S.W.3d at 68 (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)); *see Williams*, 294 S.W.3d at 681 ("There must be affirmative evidence in the record raising the lesser offense before an instruction is warranted.") (citing *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

A person acts recklessly with respect to the result of her conduct when she is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. Tex. Penal Code § 6.03(c). As noted previously, injury to a child is a result-oriented offense requiring a mental state that relates to the result of specific conduct, not to the conduct itself. *Williams*, 235 S.W.3d at 750. Thus, to warrant a lesser-included-offense instruction on reckless injury to a child, there must be some evidence in the record demonstrating that appellant was aware of but consciously disregarded a substantial and unjustifiable risk that serious bodily injury would occur from inflicting multiple blunt force injuries on J.S. This evidence must also rebut or negate the mental state of the greater offense: intentionally or knowingly. Appellant directs us to no such evidence. The evidence she relies on does not demonstrate reckless injury to a child.

13

Appellant asserts that two of her admissions entitle her to an instruction on reckless injury to a child: her admission to striking J.S. while disciplining him and her concession that as she did so the belt might have hit J.S. in the head but she did not intend for it to. At best, these admissions demonstrate appellant's reckless mental state as to non-fatal surface injuries inflicted on J.S. when she spanked him, giving him "no more than five" "licks" on his buttocks, back, and legs with a belt and her hand. This evidence does not, however, negate or rebut the greater culpable mental state (intentionally or knowingly) or the greater injury (serious bodily injury) associated with the fatal internal injuries inflicted on J.S. Appellant also notes evidence of other explanations that she offered for how J.S.'s injuries could have occurred and suggests that the explanations raise the lesser-included offense. However, these explanations do not constitute evidence of appellant's reckless mental state. The other explanations for J.S.'s injuries included an altercation between J.S. and another child over a LEGO toy and a child hitting J.S. in the pick-up line at school, giving him a black eye.[4] Neither of these explanations, which reflect conduct by other individuals, constitutes evidence of appellant's reckless mental state as to the serious bodily injuries she inflicted on J.S. We also reject appellant's assertion that the fact that, according to appellant, "the most serious injuries may not have even been noticeable to general observers" constitutes evidence demonstrating appellant's reckless mental state. What others noticed or failed to notice does not demonstrate that appellant was aware of but consciously disregarded a substantial and unjustifiable risk that serious bodily injury would occur from inflicting multiple blunt force injuries on J.S. Nor does the

---

[4] The evidence at trial reflected that these alleged incidents happened either before or during spring break, which was almost a month before J.S. died.

speculation of what might have been noticeable to others constitute affirmative evidence that rebuts or negates the intentional or knowing infliction of serious bodily injury, the culpable mental state of the greater offense. Appellant also suggests that the fact that she "even sought medical treatment although [J.S.'s father] did not cooperate" somehow demonstrates reckless injury to a child. However, the evidence does not reflect that appellant "sought medical treatment" for the fatal serious bodily injuries she inflicted on J.S. Rather, the evidence shows that she told J.S.'s father to take him to the doctor to address his shoulder injury and called J.S.'s father during the week before J.S. died to tell him that J.S. was sick and was staying home from school. Furthermore, appellant fails to explain, and we cannot discern, how this evidence demonstrates her reckless mental state as to the serious bodily injury she inflicted on J.S.[5]

Moreover, none of the evidence appellant relies on establishes the lesser-included offense as a valid, rational alternative to intentional or knowing injury to a child. *See Rice*, 333 S.W.3d at 145. Given the severity and quantity of J.S.'s injuries, *see* discussion *supra* pp. 4–6, we conclude that no rational jury could find that appellant was guilty only of the lesser offense of reckless injury to a child.

---

[5] In her brief, appellant cites to a 1983 El Paso Court of Appeals case to support her argument that seeking medical treatment raises reckless injury to a child. *See Priego v. State*, 658 S.W.2d 655, 661 (Tex. App.—El Paso 1983, no writ). Appellant's reliance on this case is misplaced. Appellant argues that the court in *Priego* concluded that a "delay in seeking medical treatment explained by economic or self-treatment raised lesser included [offense] of recklessness." However, the court actually concluded that Priego's testimony presented a lesser culpable mental state when she explained that the reason for her delay in seeking medical treatment for the child victim was her belief that the burn was not that serious and that she could take care of the injury herself. *Id.* Appellant provided no such testimony in this case. She indicated that she did not take J.S. for medical treatment because she was not his parent.

15

In sum, the record does not contain evidence that would have permitted the jury to reach a rational conclusion that if guilty, appellant was guilty *only* of reckless injury to a child. Consequently, the omission of such an instruction in the jury charge does not constitute error. Because we find no error in the jury charge, we need not conduct a harm analysis. *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009). We overrule appellant's second point of error.

## Ineffective Assistance

In her third and final point of error, appellant asserts that her attorney's failure to request a jury instruction on the lesser-included offense of reckless injury to a child (see point of error two above) constituted ineffective assistance of counsel.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must indulge a strong presumption that counsel's representation falls within the wide range of reasonable professional assistance—that is, we must presume that trial counsel's actions or inaction and decisions were reasonably professional and motivated by sound trial strategy. *Strickland*, 466 U.S. at 686; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). To rebut that presumption, a claim of ineffective

16

assistance must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield*, 363 S.W.3d at 592 (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93. This statement is true with regard to the "deficient performance" prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Id.* at 593. Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id.* "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

In our discussion of appellant's second point of error, we concluded that appellant was not entitled to a jury-charge instruction on the lesser-included offense of reckless injury to a child. *See supra* pp. 13–16. Accordingly, trial counsel's failure to request such an instruction could not constitute deficient performance. Furthermore, the record does not reflect why the instruction was not requested. As appellant acknowledges, not requesting the instruction could very well have been trial strategy on the part of appellant's trial counsel. Absent record evidence regarding counsel's strategy, we cannot speculate as to whether a valid strategy existed, and thus appellant cannot rebut the strong presumption of reasonable assistance. The failure to request a lesser-included-offense instruction, without explanation for trial counsel's decisions, does not

17

compel a conclusion that trial counsel's performance was deficient. We cannot say that "no reasonable trial strategy could justify" counsel's decision to not request such an instruction. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Nor can we conclude that counsel's conduct in not requesting the instruction was "so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 592. We hold that appellant has failed to demonstrate deficient performance on the part of her trial counsel.[6]

Because appellant has failed to make the required showing of deficient performance, her claim of ineffective assistance fails. We overrule appellant's third point of error.

## CONCLUSION

Having overruled appellant's three points of error, we affirm the trial court's judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed on Motion for Rehearing

Filed: June 17, 2014

Do Not Publish

---

[6] Because appellant failed to meet her burden on the first prong of *Strickland*, we need not consider the requirements of the second prong—prejudice. *See Lopez v. State*, 343 S.W.3d 137, 144 (Tex. Crim. App. 2011).

18