PD-0442-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/17/2015 3:43:26 PM
Accepted 4/21/2015 2:21:09 PM
ABEL ACOSTA
CLERK

*Oral argument requested*

PD-____-15

IN THE TEXAS COURT OF CRIMINAL APPEALS

ALICE ANNETTE STEELE

*APPELLANT*

vs.

THE STATE OF TEXAS

*APPELLEE*

FROM THE FIFTH COURT OF APPEALS
CAUSE NO. 05-13-00930-CR

APPEAL FROM THE 194TH JUDICIAL DISTRICT COURT
OF DALLAS COUNTY, CAUSE NO. F08-45120-M

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

FILED IN
COURT OF CRIMINAL APPEALS

April 21, 2015

ABEL ACOSTA, CLERK

## Ground for Review

Whether the complainant's mother's affirmation that what she "want[ed] to know the most" was "what happened to [the complainant]" was a call for testimony only Steele could supply.

# Table of Contents

Ground for Review ............................................................................ 2

Index of Authorities ........................................................................ 4

Identity of Parties and Counsel ................................................... 5

Statement Regarding Oral Argument ........................................ 6

Statement of the Case and Procedural History ........................ 7

Argument ........................................................................................... 9

    The complainant's mother's affirmation that what she "want[ed] to know the most" was "what happened to [the complainant]" was a call for testimony only Steele could supply. .................................. 9

        I.  The trial court's error ...................................................... 9

        II.  The court of appeals's strained resolution .............................. 11

        III. Neither of the court of appeals's suggested inferences is at all plausible .................................................................................. 13

Prayer ............................................................................................... 16

Certificate of Service ..................................................................... 17

Certificate of Compliance ............................................................. 17

Appendix .......................................................................................... 18

# Index of Authorities

**Cases**

*Brewer v. State*, No. 03-10-00076-CR, 2011 WL 3890365, at \*4 (Tex. App.—Austin 2011) ............................................................................ 12

*Cacy v. State*, 901 S.W.2d 691, 703–04 (Tex. App.—El Paso 1995, pet. ref'd) ....................................................................................................... 13

*Delay v. State*, --- S.W.3d ---, No. PD-1465-13, 2014 WL 4843911 (Tex. Crim. App. Oct. 1, 2014) (Meyers, J., dissenting) ............................... 15

*Ex parte Jimenez,* 364 S.W.3d 866, 888 (Tex. Crim. App. 2012) ............ 13

*Madden v. State*, 799 S.W.2d 683, 699 (Tex. Crim. App. 1990) ....... 11, 15

*Owen v. State*, 656 S.W.2d 458 (Tex. Crim. App. 1983) .......................... 12

*Randoph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011) ............ 12

*Roberson v. State*, 100 S.W.3d 36 (Tex. App.—Waco 2002, pet. ref'd) (same) ..................................................................................................... 12

*Steele v. State*, No. 05-13-00930-CR, 2015 WL 1291508 (Tex. App.—Dallas Mar. 19, 2015) ............................................................... 8, 13, 14

**Statutes**

TEX. PEN. CODE § 22.04 ............................................................................... 7

**Rules**

TEX. R. EVID. 614 ...................................................................................... 15

## Identity of Parties and Counsel

For Appellant Alice Annette Steele:

BRUCE ANTON
*Trial counsel of record*
SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201

EDWARD P. SHOEMAKER
*Trial counsel of record*
705 Ross Avenue
Dallas, Texas 75202

BRUCE ANTON
BRETT ORDIWAY
*Appellate counsel of record*
SORRELS, UDASHEN & ANTON

For Appellee the State of Texas:

DOUGLAS MILLICAN
REYNIE TINAJERO
*Trial counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
133 North Riverfront Boulevard
Dallas, Texas 75207

MARTIN L. PETERSON
*Appellate counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Trial court:

THE HONORABLE ERNEST WHITE
194TH JUDICIAL DISTRICT COURT

## <u>Statement Regarding Oral Argument</u>

The court of appeals's decision conflicts with this Court's opinion in *Madden v. State*, 799 S.W.2d 683, 699 (Tex. Crim. App. 1990). Steele believes oral argument would be helpful to this Court's understanding of just how.

**Statement of the Case and Procedural History**

While in Steele's care, the 14-month-old complainant suffered head and brain injuries from which she eventually died. (RR4: 55). Steele told police that the complainant had fallen and hit her head, and that, a few days later, Steele had accidentally bumped the complainant's head against a doorframe. (State's Exhibit 58, RR6: 68). The police did not believe Steele, and a Dallas County grand jury indicted her for intentionally or knowingly injuring a child. (CR: 17); *see* TEX. PEN. CODE § 22.04.

Steele pleaded not guilty, and, at her trial, the defense called experts who testified that the complainant's injury could have been caused precisely as Steele maintained. (RR8: 62, 67). The State, by contrast, presented experts who testified that the complainant's injuries must have been the result of a massive, high-impact blow against a door or another object. The State then asked the jury "to infer Steele initiated the contact between [the complainant's] head and the object under circumstances that would make the resulting severe injury reasonably certain to occur." (St. Br. at 5). And the State bolstered its case by: (1) delivering a closing argument which repeatedly stated law contrary to

7

the charge on the manner and means of the offense; (2) commenting on Steele's failure testify; and (3) arguing in closing that Steele had the burden of proving her innocence. (Br. at 11-12). The jury, then, found Steele guilty of the lesser-included offense of recklessly injuring a child. (RR1: 13-14).

In Steele's opening brief on appeal, she argued that the trial court erred in allowing the State to support its case in each of those three manners. *Steele v. State*, No. 05-13-00930-CR, 2015 WL 1291508 (Tex. App.—Dallas Mar. 19, 2015). The court disagreed, overruling each contention and affirming Steele's conviction. *Id.* This petition now follows.

## Argument

The complainant's mother's affirmation that what she "want[ed] to know the most" was "what happened to [the complainant]" was a call for testimony only Steele could supply.

◆   ◆   ◆

## I.   The trial court's error

The State called the complainant's mother as its final witness at the punishment phase of trial. (RR11: 98). After explaining how her daughter's death affected her, she lamented that she would "never know what happened" to cause her daughter's death:

| Prosecutor: | …[H]ow has this event, how has it affected you personally? |
|---|---|
| Witness: | It changed my life. I lost my daughter at the age of 21. I was 21 years old. I never thought that I would bury my own child. And it is not like she died from being sick. It is not like she was born ill. She died because of choices somebody else made. And for the last five years, I have had to suffer the consequences that my daughter is not here, she is not coming back. And when I got her back, she was not the baby that I gave birth to. *I will never know what happened to my daughter* and that's fine, that's fine. |

(RR11: 99). The prosecutor seized upon this comment, suggesting that "in our conversations you have actually told me that's kind of what you

9

want to know the most." (RR11: 99). The complainant's mother agreed, and the State then pressed on further, questioning whether she had "kind of come to terms to the fact that [she was] never going to find that out?" (RR11: 99-100). Defense counsel then objected, but was overruled:

Defense counsel: Your Honor, may we approach.

The court: You may.

(Following proceedings were had at the bench.)

Defense counsel: There just isn't anyway to get through this such is as an outrageous attack to remain silent [sic]. The only person they can find out from is [Steele]. And the only explanation she can give is post arrest: And they have not asked the question once, but twice. This is outrageous, just simply the grossest violation of the Fifth Amendment that you can ever see. And I don't think any instruction to disregard will cure after you plant the seed. And I just can't believe...

The court: Any response from the State?

Prosecutor: Well, Your Honor, that does not necessarily imply that the defendant would have to say anything, that is a reality she lives with, everything that happens in our lives. Things that don't happen in our presence, we never have a full understanding what they have seen with their own eye. And our

10

| | |
|---|---|
| | question hasn't come close to approaching it. The fact that she is never going to know what happened to her child. That does not imply that the defendant would have to testify in order to solve that. |
| The court: | The Court would overrule the objection. |
| Defense counsel: | Can we have a running objection. |
| The court: | You may. |

(RR11: 99-100).

## II. The court of appeals's strained resolution

Accordingly, in Steele's second issue on appeal, she argued that the trial court erred in allowing the State, through its questioning of the complainant's mother, to comment on Steele's right to remain silent. (Br. at 21). Where only Steele was present at the time of the complainant's injury, the jury necessarily took the State's prompting of the complainant's mother as a comment on Steele's failure to testify. (Br. at 24). In support, Steele pointed to this Court's opinion in *Madden v. State*, 799 S.W.2d 683, 699 (Tex. Crim. App. 1990), in which this Court explicitly held that a prosecutor's argument that "calls for testimony which only appellant himself could supply" amounts to a "direct comment on

11

[an] appellant's failure to testify and violates [Code of Criminal Procedure] Art. 38.08, and appellant's rights under both the state and federal constitutions." *See also Brewer v. State*, No. 03-10-00076-CR, 2011 WL 3890365, at *4 (Tex. App.—Austin 2011) *rev'd on other grounds*, 367 S.W.3d 251 (Tex. Crim. App. 2012) ("If the remark called the jury's attention to the absence of evidence that only testimony from the defendant could supply, the conviction is subject to being reversed."). The State, in response, complained that Steele "mischaracterize[ed]" what actually occurred: "not an improper question or a subterfuge used to 'comment' on Steele's elections not to testify," but merely the "proper topic" of "the emotional or psychological distress suffered by [the complainant's] mother." (St. Br. at 14).

Unsurprisingly, the court of appeals declined to adopt the State' position. For, it does not matter what was intended if "the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Randoph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011); *see, e.g., Owen v. State*, 656 S.W.2d 458 (Tex. Crim. App. 1983); *Roberson v. State*, 100 S.W.3d 36 (Tex. App.—Waco 2002, pet. ref'd) (same); *Cacy v. State*, 901 S.W.2d 691, 703–04 (Tex. App.—El Paso

12

1995, pet. ref'd) (same). But nor did the court accept Steele's argument. Instead, the court overruled Steele's argument because it reasoned the jury did not necessarily and naturally take the complainant's mother's comment as on the defendant's failure to testify. *Steele*, 2015 WL 1291508 at *8. In so doing, the court identified two alternative interpretations of the complainant's mother's testimony. But neither is plausible.

### III. Neither of the court of appeals's suggested inferences is at all plausible

The court of appeals first suggested the complainant's mother's testimony—that what she "want[ed] to know the most" was "what happened to [the complainant]"—"could have" simply "been a reference to the fact that all of the medical experts who testified had differing opinions and explanations of the sequence and severity of [the complainant's] injuries." *Id.* at *8. And, indeed, medical experts are often useful in determining the cause of death. *See, e.g., Ex parte Jimenez,* 364 S.W.3d 866, 888 (Tex. Crim. App. 2012) ("Additional defense medical experts would surely have been helpful, but they were not constitutionally required."). But a forensic explanation is very different than an explanation of the circumstances surrounding the offense. And here, the

complainant's mother very generally expressed her desire to know "what happened to [her] daughter." The court's conclusion that the jury could nonetheless have inferred the complainant's mother's testimony to refer to a scientific explanation is simply illogical.

The court of appeals's second suggestion fares no better. There, after noting "the mother's testimony and the prosecutor's follow-up questions were made after the jury heard, through numerous witnesses, appellant's explanations of how [the complainant] was injured," the court concluded that, "[i]n context," the complainant's mother's testimony could have referred not to Steele's failure to offer an explanation, but to her disbelief of "the explanations that [Steele] had already given." *Steele*, 2015 WL 1291508 at *8. But, as the court itself recognized, it was *the jury*, not the complainant's mother, who heard Steele's explanations of how the complainant was injured. The complainant's mother heard nothing—before trial the State "invoke[d] the Rule" as to "all witnesses." (RR4: 11); *see* TEX. R. EVID. 614 ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony."). Her testimony couldn't have indicated her dis-

14

satisfaction with any content, then. The court's second suggestion is therefore even more implausible than its first.

What's left is the far more likely inference to have been drawn from the complainant's mother's testimony—the only one, really—and precisely what Steele has urged from the moment it was uttered: that it was a comment on Steele's right to remain silent. (RR11: 100). And just as "[a]rgument that points to a lack of evidence that only the defendant personally can supply... violates the defendant's right against self-incrimination," so does questioning. *Madden*, 799 S.W.2d at 699. The trial court thus should have sustained counsel's objection to this exchange as an improper comment on the defendant's failure to testify. *Id.* The court of appeals was wrong to hold otherwise.

Somewhat recently, Judge Meyers observed that "[y]ou can always tell when an opinion is written with the outcome decided before any legal analysis is done because it reads like a medical report written by a doctor who has never conducted a physical examination of the patient." *Delay v. State*, --- S.W.3d ---, No. PD-1465-13, 2014 WL 4843911 (Tex. Crim. App. Oct. 1, 2014) (Meyers, J., dissenting). And just like in that case, "this is precisely how the... opinion in this case comes across." *Id.*

15

The opinion simply "ignored the facts in order to arrive at a desired outcome." *Id.* Fortunately, this Court can fix that.

## Prayer

Accordingly, Steele respectfully requests this Court to grant this petition so that it may reverse the decision of the court of appeals and remand this case to that court to conduct a harm analysis.

Respectfully submitted,


/s/ Bruce Anton
BRUCE ANTON
Bar Card No. 01274700
ba@sualaw.com


/s/ Brett Ordiway
BRETT ORDIWAY
Bar Card No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Attorneys for Appellant*

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was electronically served to the Dallas County District Attorney's Office and the State Prosecuting Attorney on April 17, 2015.

_____/s/ Bruce Anton_____
BRUCE ANTON

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this petition contains 1,468 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.

_____/s/ Bruce Anton_____
BRUCE ANTON

17

# **<u>Appendix</u>**

**AFFIRM; and Opinion Filed March 19, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00930-CR

**ALICE ANNETTE STEELE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-0845120-M**

## MEMORANDUM OPINION

Before Justices Fillmore, Schenck,[1] and Chief Justice Thomas, Retired[2]
Opinion by Justice Schenck

Appellant Alice Annette Steele was indicted for the offense of intentionally or knowingly injuring a child. A jury convicted appellant of the lesser-included offense of recklessly injuring a child, and sentenced her to 20 years' imprisonment. In three issues, appellant asserts the trial court erred by overruling her objections to improper questioning of a witness and improper closing argument. We affirm the trial court's judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. RS. APP. P. 47.2(a), 47.4.

---

[1] The Honorable Justice David J. Schenck succeeded Justice Michael O'Neill, a member of the original panel, following Justice O'Neill's retirement. Justice Schenck has reviewed the briefs and the record before the Court.

[2] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

BACKGROUND

On February 16, 2008, K.S. and her two-year-old brother went to stay at appellant's home for a few days while their parents were at the hospital for the birth of a new baby. K.S. was 14 months old. On February 25, 2008, the children were still at appellant's home in her care. On that morning, appellant called 911 to report that K.S. had been choking on a toy and was unresponsive. Paramedics arrived and called for additional help from the Richardson Fire Department. K.S. was taken to Richardson Regional Medical Center, where the emergency room doctor determined that K.S. needed treatment that was not available there. K.S. was taken by care flight to Children's Medical Center of Dallas, where she underwent brain surgery for a subdural hematoma. As a result of her injuries, K.S. suffered brain damage and blindness. K.S. eventually returned home, but died on December 11, 2008, from complications of her injury.

Appellant was indicted for injury to a child on April 21, 2008. Trial commenced in June, 2013. The jury heard testimony of some forty witnesses over the course of nine days. The evidence at trial included a videotaped interview of appellant by the Richardson police and appellant's written statement, both made on February 25, 2008, after K.S. had been taken to the hospital. In these statements, appellant explained that she got up and drove her daughter to school, leaving K.S. and her brother at home asleep. When appellant returned, K.S. was still asleep, but woke up shortly after and was coughing. Appellant, who has a medical assistant certificate, thought K.S. was choking. Appellant stated that she patted K.S.'s back and then put her finger in K.S.'s throat and pulled out a small blue "Lego" toy. K.S. "went limp," and appellant called 911. Appellant gave this explanation to the 911 dispatcher and the paramedics as well as the police.

Emergency personnel who responded on February 25 testified at trial, including the 911 dispatcher, paramedics, and firefighters from the Richardson Fire Department. A recording of the

911 call was played for the jury. Five police officers who were involved in the case also testified, as well as three doctors who examined or treated K.S. Through the testimony of these witnesses, the State developed evidence that K.S.'s injuries were not consistent with choking; the blue Lego was never found; and appellant's explanation changed in the course of questioning, to add that K.S. bit her when she pulled out the Lego, causing appellant to turn around and bump K.S.'s head against a door jamb. Medical testimony established that K.S. suffered a massive subdural hematoma, which the emergency room doctor defined as "blood on the outside of the brain."

The jury heard evidence that K.S. suffered a bump on her forehead earlier in the week, causing a visible raised abrasion. The evidence also showed that there was no other mark visible on K.S.'s head except a small red mark on the back of her head observed by the neurosurgeon immediately before surgery. Appellant offered the testimony of three experts at trial to interpret this evidence. Dr. Janice Ophoven and Dr. John Plunkett, specialists in forensic pathology, are both medical doctors. The third expert, John Lloyd, has a Ph.D. in ergonomics and is a brain injury specialist. These experts testified that two minor injuries (the first bump on the head and a later minor bump on the door jamb consistent with appellant's explanation) could have been the cause of K.S.'s massive subdural hematoma. They also testified that a small injury could cause massive bleeding, and any severe impact would leave at least some mark on the skin. Dr. Ophoven concluded that in her opinion, "there is not verifiable evidence that this child's injuries were the result of inflicted trauma or child abuse." Dr. Plunkett testified that a child with a head injury could have a "lucid interval" of hours or days before showing symptoms. He further explained that the size of a subdural hematoma does not correlate with the amount of impact or force that caused the injury; a minor impact could cause a large subdural hematoma. He, too, concluded that although K.S. had a traumatic brain injury, he "would not call it intentional."

–3–

Four doctors testified on behalf of the State. Dr. Gregory Lachar, the emergency room doctor who treated K.S.; Dr. Angela Price, the neurosurgeon who operated on K.S.; and Dr. Matthew Cox, a specialist in child abuse pediatrics who examined K.S. during her hospitalization at Children's Medical Center, all testified regarding the nature and extent of K.S.'s injuries, as well as the treatment required. The fourth doctor, Dallas County Medical Examiner Reade Quinton, conducted an autopsy on K.S. in December 2008.

Dr. Price testified that when K.S. arrived at Children's, "she was almost very close to dying." Immediate surgery was necessary to control the bleeding in K.S.'s brain. Dr. Price described massive swelling of K.S.'s brain. She testified that "[t]he most probable set of circumstances is that this subdural occurred within two to three hours" before K.S. arrived at the emergency room, and "anything over six hours" would be improbable. She testified it was "very improbable" that the subdural hematoma occurred and continued to bleed over a 72-hour period before K.S. showed any symptoms. The symptoms observed by the paramedics and the emergency room doctor suggested "that she is rapidly progressing," so that the most probable time the injury occurred was within a few hours of the paramedics' arrival. Dr. Cox testified that K.S.'s injury could not have been caused by a "minor impact"; it "had to be a severe and violent event." Dr. Quinton testified that the cause of K.S.'s death was blunt-force injury to the head and the subsequent consequences of that injury. He classified her death as a homicide. He also testified that "[t]he history of the LEGO in the airway did not really fit the findings that were found at that time"; "we are also talking about massive swelling of the brain and subdural hematoma, which wouldn't be caused by just airway obstruction." He testified that "progressive" injuries, worsening over the course of a few days, were possible, but not without accompanying symptoms, which K.S. did not display.

The jury found appellant guilty of reckless injury to a child. During the punishment phase of the trial, witnesses for the State testified that appellant had been abusive to her own children in the past. Her children, however, denied any abuse, and they and numerous other witnesses testified that appellant was a loving, caring, person. The jury sentenced appellant to 20 years' confinement. This appeal followed.

**DISCUSSION**

## A. Improper jury argument

### 1. Standards of review and applicable law

In her first and third issues, appellant contends the trial court erred by overruling her objections to the prosecutor's closing argument during the guilt/innocence phase of the trial. Proper areas of jury argument are: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Counsel is generally given wide latitude in drawing inferences from evidence as long as they are reasonable, fair, legitimate, and offered in good faith. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).

Even if jury argument falls outside permissible areas, an appellate court will not reverse unless the error is harmful. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). The standard for reviewing whether harm occurred depends on the kind of error involved. *Id.* For constitutional error, we apply the standard set forth in rule 44.2(a) of the Texas Rules of Appellate Procedure. *Id.* Rule 44.2(a) provides that the court of appeals "must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."

For non-constitutional error, a trial court's erroneous overruling of a defendant's objection to improper jury argument is not reversible unless it affected the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000). "A criminal conviction should not be overturned . . . if the appellate court, after reviewing the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In making that determination, the appellate court should evaluate: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instructions by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley*, 983 S.W.2d at 259.

### 2. Argument regarding manner and means of injury

Appellant's first issue relates to a portion of the prosecutor's closing argument during the guilt/innocence phase of the trial. As we discuss below, this argument was made in the rebuttal portion of the State's argument, in response to appellant's argument that the State must prove "what happened":

> And I know I keep talking about this, the thing that she did. The thing that she did. Here I am, I am not saying slammed her head again[st] the floor or slammed her ahead [sic] against the bed. There is a reason that the indictment reads the way it does. The law allows for that. The law foresees just this type of situation where, here we have this child that was otherwise fine, that was in the care of this person right here. Now all of a sudden they are dead. Okay --
>
> MR. ANTON: Your Honor, that is a misstatement of the law. That's a misstatement of the indictment. The indictment says they don't have to prove the weapon. It specifically does not say that they don't have to tell us what happened. And I object to that. That's a misstatement of the indictment, Your Honor.
>
> THE COURT: Overruled.

–6–

MR. ANTON: I would like a running objection, Your Honor.

THE COURT: You may have it.

Appellant contends that by overruling her objection, the trial court permitted the State to argue that it was not required to prove the manner and means of injury. The indictment alleged that appellant intentionally or knowingly caused serious bodily injury to the complainant by striking her against a door jamb or striking her with or against an unknown object. Appellant argues that under the indictment, although the State was not required to prove the object, the State was required to prove that appellant struck the complainant. And in her reply brief, appellant contends that the only issue at trial was her mental state: "did [appellant] accidentally bump the complainant's head against a doorframe? Or did [appellant] intentionally or knowingly strike the complainant with or against a doorjamb or unknown object?" Appellant notes that the jury charge contained the same language as the indictment, and contends the State's argument "repeatedly stated law contrary to the court's instruction on the manner and means of the offense by removing the requirement that the jury find beyond a reasonable doubt that [appellant] struck the complainant." Appellant cites *State v. Renteria*, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998), for the proposition that a closing argument stating law contrary to the court's charge is improper.

We conclude the trial court did not err by overruling appellant's objection. As reflected in the objection itself, appellant's defense included the contention that the State was required to prove "what happened" but had not done so. In closing argument, appellant's counsel stated:

> At the very end I would like for the State to tell you . . . at some point during their presentation what happened. I think [appellant] is owed that, what happened. How did this injury occur, what happened. They haven't told us that yet. And I don't know if they are going to tell us that after I sit down.
>
> If they can't tell you what happened. If they can't present a scenario to you which is supported by other than their wild speculation and hypotheses

–7–

made up out of [whole] cloth, I don't know how you can convict [appellant] of anything.

Appellant's counsel also argued:

[F]inally, in the indictment, it says they used a weapon unknown, we don't even know what they are going to say. We have seen the mattress, we have seen the floor, we have seen the doorjamb, we don't know what else. They have come up with any instrument they want claiming injury. They can argue whatever they want. Can they ever point out to you what happened[?]

The State answered these arguments by addressing what it was required to prove under the indictment. *See Brown*, 270 S.W.3d at 570. The prosecutor's argument quoted above was made during his rebuttal of the closing argument for the defense. He began this portion of his argument by explaining the verdict sought by the State:

We don't want you to convict her because she lied. We don't want you to convict because she lied to the police. We want you to convict her because she is guilty of intentionally or knowingly causing serious bodily injury to [K.S.]. And her lies revealed the truth about what happened that morning. There is a huge difference between those two. I hope you see the difference.

In context, the trial court was within its discretion to conclude that the prosecutor had not misstated the elements of the offense the State was required to prove. And in addition, as we explain below, the prosecutor could summarize the evidence or draw reasonable conclusions from the evidence in his argument. *See Brown*, 270 S.W.3d at 570. We conclude the trial court did not err by overruling appellant's objection.

Even if the trial court did err, we conclude any error was not harmful under the standards set forth in *Mosley*. *See Mosley*, 983 S.W.2d at 259. Under the first factor, appellant argues the misconduct was severe. Appellant explains that because she "admitted having engaged in conduct contributing to the complainant's injury," she "relied entirely on expert witnesses in her defense." The State's "theme of painting [appellant's] expert defense . . . as absurd," therefore, improperly undercut the central point of her defense, specifically, that K.S.'s injury "was caused

–8–

by a minor, accidental impact." She contends that the State's argument urged the jury to find appellant guilty "simply for being present."

A prosecutor may argue that the witnesses for the defense are not worthy of belief. *Satterwhite v. State*, 858 S.W.2d 412, 425 (Tex. Crim. App. 1993). When appellant's experts testified on her behalf on the issues contested at trial, their credibility became an issue and was the proper subject of comment by the prosecutor. *Id.* The prosecutor, then, could argue the experts' testimony that a "minor, accidental impact" caused K.S.'s injuries was not credible, based on reasonable deduction from other evidence in the record. For example, Dr. Cox testified "there had to be a high-force-type injury involving different forces"; "it is a very high-force injury, more than what I would see in a head hitting a wall or head being hit into a wall, someone holding a child and turning, something along those lines." Dr. Cox concluded, "[s]o it had to be a severe and violent event." The prosecutor could summarize the evidence or draw reasonable conclusions from the evidence. *See Brown*, 270 S.W.3d at 570; *see also Garcia*, 126 S.W.3d at 925 (by telling jury that defense counsel's arguments were "hogwash," prosecutor was merely stating "in colorful language" his opinion regarding the merits of defense counsel's arguments; trial court did not err by refusing to instruct jury to disregard).

Under the second factor, the trial court did not give any cautionary instruction, which weighs in appellant's favor. Under the third factor, appellant argues the strength of the evidence supporting conviction was weak, so there was little certainty of conviction absent the misconduct. The jury found appellant guilty of the offense of reckless injury to a child. The jury charge contained instructions regarding this offense:

> A person commits reckless injury to a child if she recklessly causes bodily injury to a child. A person acts "recklessly" or is "reckless" with respect to the result of her conduct when she is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation

–9–

from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the standpoint of the person charged.

In cases involving injury to a child, there is rarely direct evidence of exactly how the child's injuries occurred. *Williams v. State*, 294 S.W.3d 674, 683 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Instead, we look to rational inferences from circumstantial evidence to determine whether the State met its burden of proof. *See id.* Intent can be inferred from the extent of the injuries to the victim and the relative size and strength of the parties. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). It can also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).[3]

Despite the circumstantial nature of the evidence, the jury could have reasonably inferred that appellant was the person who injured K.S. *See Martin v. State*, 246 S.W.3d 246, 261–62 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (jury could make reasonable inferences from circumstantial evidence at trial that appellant caused child's fatal injuries). The only evidence— some of which resulted from appellant's own explanations given to witnesses who testified at trial—was that K.S. was in appellant's care, and only appellant's care, at the time of her injury; appellant first explained that K.S. had been choking; appellant changed her explanation upon further questioning; law enforcement officers were unable to substantiate appellant's explanation by any evidence found at her home; and medical experts testified that the nature and extent of K.S.'s injuries were not consistent with either choking or "minor, accidental impact" in the

---

[3] *See also Garcia v. State*, 16 S.W.3d 401, 405 (Tex. App.—El Paso 2000, pet. ref'd), in which the court explained:

> Texas case law is replete with holdings that when an adult defendant has had sole access to a child at the time its injuries are sustained, the evidence is sufficient to support a conviction for injury to a child, or murder if the child dies. *See Bryant v. State,* 909 S.W.2d 579, 583 (Tex. App.—Tyler 1995, no pet.)(where evidence showed child had been left alone with defendant and injuries to child occurred approximately thirty minutes prior to child being brought to emergency room, evidence was sufficient to support conviction); *Elledge v. State,* 890 S.W.2d 843, 846 (Tex. App.—Austin 1994, pet. ref'd) (undisputed medical testimony placing adult defendant alone with child when fatal injuries were sustained supported conviction for injury to a child); *Butts v. State,* 835 S.W.2d 147, 151 (Tex. App.—Corpus Christi 1992, pet. ref'd)(injuries sustained by child established by medical testimony to have occurred at time adult defendant admitted to sole possession of child).

manner appellant described. Further, Dr. Cox testified that the cause of K.S.'s injury "had to be a severe and violent event," such as a car accident. Without evidence of such an accidental event, Dr. Cox agreed that there is "a certain element of intent that goes along with that in causing those injuries." He concluded, "[b]ased on the degree of force needed to cause this injury, yes, I would expect someone would realize there could be injuries." The evidence supporting the jury's verdict of reckless injury to K.S. was not so weak that there was little certainty of conviction absent the alleged prosecutorial misconduct. *See Mosley*, 983 S.W.2d at 259. We overrule appellant's first issue.

### 3. Argument regarding burden of proof

Appellant's third issue addresses a later portion of the prosecutor's rebuttal argument:

> They say that we need objective evidence, that the State should provide objective evidence before we should jump to a conclusion that there was some sort of additional act. Well, shouldn't you require credible evidence that it was anything other.

> THE COURT: You have five minutes.

> MR. MILLICAN: Thank you, Your Honor. Did you get any credible evidence from them to say --

> MR. ANTON: Your Honor, he is shifting the burden of proof.

> THE COURT: Overruled.

> MR. ANTON: May I have a running objection to that?

> THE COURT: You may.

> MR. MILLICAN: You are the judges of the credibility of the witnesses.

> The only thing that Dr. Ophoven and Dr. Plunkett were making their decision on was the word of the defendant, that was the patient history they got. And I asked Dr. Ophoven, did you see the video of [appellant]? No, that is not important. That is step number one for her, to collect important information from her. And when she gets the best information that anyone could possibly show her of what happened to [K.S.], she said, I don't want to see that. Don't you think they should bring some credible evidence to support their theory.

Appellant argues that the trial court erred by overruling her objection because the prosecutor argued that she was required to "bring some credible evidence" for the jury to consider. Citing *Abbott v. State*, 196 S.W.3d 334, 344 (Tex. App.—Waco 2006, pet. ref'd), for the proposition that a prosecutor may not misstate the law, appellant contends that this argument erroneously assigned to her the burden of proof to raise a reasonable doubt as to her guilt. We disagree.

In context, the State made the argument as part of its contention that the expert witnesses for the defense were not credible. As we have explained, a prosecutor may argue that the witnesses for the defense are not worthy of belief. *Satterwhite*, 858 S.W.2d at 425. In addition, a prosecutor may answer arguments of opposing counsel. *See Brown*, 270 S.W.3d at 570. The prosecutor was addressing appellant's arguments that (1) the objective facts supported the testimony of Drs. Plunkett and Ophoven;[4] (2) there are no objective facts supporting the State's theory of intentional injury;[5] (3) the testimony of Drs. Price and Cox was unreliable;[6] and (4) Drs. Plunkett and Ophoven were more credible.[7] In addition, appellant's counsel had emphasized that the State had not met its burden of proving "beyond a reasonable doubt that this was nonaccidental, intentional head trauma." We conclude the trial court did not err by overruling appellant's objection.

If error did occur, we would determine whether reversal is required applying the standards for constitutional error under rule 44.2. *See Mosley*, 983 S.W.2d at 259; TEX. R. APP. P. 44.2(a) (court of appeals must reverse unless court determines beyond a reasonable doubt that

---

[4] Appellant's counsel had argued: "[T]he reason we brought down Dr. Plunkett, the reason we brought down Dr. Ophoven is to tell you what Dr. Price told you and the E.R. doctor told you, you can have a minor impact and have a major subdural. . . . Dr. Plunkett, Dr. Ophoven said that several days later, that there was another triggering event. In all likelihood in Dr. Plunkett's opinion, it was when the child's head impacted the doorjamb. And at that point given the pre-existing injury, there was a cascading event. And those are the facts."

[5] "So when they get up and talk to you about how this happened, ask yourself aside from their bald face assertion, what evidence do they have of this?"

[6] Appellant's counsel argued Dr. Price was "torn between her loyalty to the staff at Children's and the truth," and Dr. Cox "just simply won't be honest with you."

[7] "Our doctors, I would submit to you, use your common sense on this, if you asked Dr. Ophoven or Dr. Plunkett, you got a straight answer. Not only did you get a straight answer, you got an answer that you can understand."

error did not contribute to conviction). The jury charge stated "the prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt." The jury charge correctly required the jury to acquit appellant of the offense of injury to a child if the jury did not "believe from the evidence beyond a reasonable doubt" that appellant committed the offense, or if the jury had "a reasonable doubt thereof." The record is devoid of any indication that the jury failed to follow the trial court's instructions regarding the burden of proof. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996) (appellate court presumes jury follows instructions given). That the jury held the State to its burden is demonstrated by its failure to find appellant guilty of intentional injury to a child. Further, there was sufficient evidence to support the jury's verdict of reckless injury to a child, as we explained in our discussion of appellant's first issue. We conclude beyond a reasonable doubt that any error did not contribute to appellant's conviction. *See* TEX. R. APP. P. 44.2(a). We overrule appellant's third issue.

## B. Testimony during punishment phase

Appellant's second issue relates to testimony given by K.S.'s mother during the punishment phase of the trial in questioning by the prosecutor:

> Q. . . . [H]ow has this event, how has it affected you personally?
>
> A. It changed my life. I lost my daughter at the age of 21. I was 21 years old. I never thought that I would bury my own child. And it is not like she died from being sick. It is not like she was born ill. She died because of choices somebody else made. And for the last five years, I have had to suffer the consequences that my daughter is not here, she is not coming back. And when I got her back, she was not the baby that I gave birth to. I will never know what happened to my daughter and that's fine, that's fine.
>
> Q. You say that, that you will never know what happened to your daughter, in our conversations you have actually told me that that's kind of what you want to know the most, right?
>
> A. Yes.

–13–

Q. But you have kind of come to terms to the fact that you are never going to find that out?

MR. ANTON: Your Honor, may we approach.

THE COURT: You may.

(Following proceedings were had at the Bench.)

MR. ANTON: There just isn't anyway to get through this such is as [sic] an outrageous attack to remain silent. The only person they can find out from is [appellant]. And the only explanation she can give is post arrest: And they have not asked the question once, but twice. This is outrageous, just simply the grossest violation of the Fifth Amendment that you can ever see. And I don't think any instruction to disregard will cure after you plant the seed. And I just can't believe . . .

THE COURT: Any response from the State?

MR. MILLICAN: Well, Your Honor, that does not necessarily imply that the defendant would have to say anything, that is a reality she lives with, everything that happens in our lives. Things that don't happen in our presence, we never have a full understanding what they have seen with their own eye. And our question hasn't come close to approaching it. The fact that she is never going to know what happened to her child. That does not imply that the defendant would have to testify in order to solve that.

THE COURT: The Court would overrule the objection.

MR. ANTON: Can we have a running objection.

THE COURT: You may.

(End of Bench Conference.)

A comment on a defendant's failure to testify violates both the federal and state constitutions as well as Texas statutory law. *Randoph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. V, TEX. CONST. art. 1 § 10, and TEX. CODE CRIM. PROC. ANN. art. 38.08). The defendant has a separate Fifth Amendment privilege not to testify at either the guilt or punishment phases of trial. *Id. Randolph* addressed remarks made by the prosecutor during closing argument in the punishment phase. *See id.* The test stated in *Randolph* for determining whether a prosecutor's argument violated a defendant's Fifth Amendment right was "whether the language used was manifestly intended or was of such a character that the jury

would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* The court explained, "[i]n applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character." *Id.* If the prosecutor's language "might reasonably be construed as merely an implied or indirect illusion, there is no violation." *Id.*

Here, the prosecutor's questions followed the mother's testimony that she will never know what happened to her daughter. Appellant argues that because appellant was the only person present at the time of K.S.'s injury, "and thus only she could explain the manner in which it was incurred," the jury necessarily took the State's questions as a comment on her failure to testify. Appellant relies on *Madden v. State*, 799 S.W.2d 683, 699 (Tex. Crim. App. 1990), in support of her argument. In *Madden*, the court stated, "[a]rgument that points to a lack of evidence that only the defendant personally can supply . . . violates the defendant's right against self-incrimination." *Id.* In *Madden*, the prosecutor argued that "there's only one person here that knows the answer to all of these questions" about why the defendant acted as he did in committing the crime. *Id.* at 700. The court concluded the trial court should have sustained counsel's objection to this argument as an improper comment on the defendant's failure to testify. *Id.* The court also determined, however, that in the context of the arguments made and the evidence presented at trial, the error did not contribute to the jury's guilty verdict. *Id.* at 701.

Viewing the entire record, the mother's testimony could have been a reference to the fact that all of the medical experts who testified had differing opinions and explanations of the sequence and severity of K.S.'s injuries, leading to the mother's conclusion that she will never know what happened to her daughter. Dr. Cox, for example, was asked, "may we ever know what the actual thing was that she was struck against or struck her?", to which he responded, "by medical assessment alone, I can't determine that, no." He testified that he would need more

–15–

information "for that to be knowable." The mother's conclusion was part of her testimony about the effect of the offense on her life. *See Brown v. State*, 2003 WL 21404050, at *6 (Tex. App.—Dallas June 19, 2003, pet. stricken) (not designated for publication) (post-conviction testimony concerning effect on victim's family of offense of injury to child generally relevant and admissible).

In addition, the mother's testimony and the prosecutor's follow-up questions were made after the jury heard, through numerous witnesses, appellant's explanations of how K.S. was injured. Some of this evidence was from appellant herself, in the video recordings of her statements to a police detective made on the day of K.S.'s injury, which were played for the jury by the State during the guilt/innocence phase of the trial. Further evidence was offered through the paramedics, doctors, and law enforcement officials who heard explanations from appellant. In context, it was not that appellant had not offered explanations for how K.S.'s injuries occurred, but that K.S.'s mother did not believe the explanations that appellant had already given. And at the time K.S.'s mother testified, the jury had already convicted appellant of reckless injury to a child, indicating that the jury did not find appellant's explanations credible either. It was within the province of the jury to determine the credibility of the evidence. *See, e.g., Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) (jury is exclusive judge of credibility of witnesses and weight to be given their testimony). "A rational trier of fact could also consider such untruthful statements by appellant, in connection with other circumstances of the case, as affirmative evidence of appellant's guilt." *Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010); *see also Garcia*, 126 S.W.3d at 924 (when defendant makes statement which is admitted into evidence, State's reference to statement and comparison between statement and other evidence collected is not comment on defendant's failure to testify or right to remain silent).

We conclude that the prosecutor's questions to K.S.'s mother were not "of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *See Randoph*, 353 S.W.3d at 891. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's three issues, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

130930F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALICE ANNETTE STEELE, Appellant

No. 05-13-00930-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-0845120-M.
Opinion delivered by Justice Schenck, Justice Fillmore and Chief Justice Thomas, Retired, participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 19th day of March, 2015.