**Opinion issued November 24, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-14-00809-CR**

———————————

**RODYS A. SANCHEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1400848**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Rodys A. Sanchez, of the first-degree felony

offense of aggravated sexual assault of a child and assessed his punishment at

confinement for life.[1]  In two issues, appellant contends that (1) his trial counsel rendered constitutionally ineffective assistance of counsel; and (2) the trial court erred by failing to instruct the jury on the lesser-included offense of indecency with a child.

We affirm.

## Background

### A.    *Factual Background*

M.V. met appellant in the summer of 2011 and they began dating.  After a couple of months of dating, M.V. introduced appellant to her three children, including her oldest daughter, D.W., the complainant, who was thirteen at the time. Appellant, his children, M.V., and her children would occasionally do activities together such as going out to restaurants or going ice skating at the Galleria.  M.V. testified that they all had fun together and that she did not notice any unusual behavior or occurrences between appellant and D.W.

On November 5, 2011, M.V., her children, and appellant had plans to bowl at the Main Event entertainment complex around mid-day.  Appellant told M.V. that he wanted to do something special for each of her children, and he proposed taking D.W. out by herself before they met up with M.V. and her other daughters for bowling.  M.V. and her daughters met appellant at a local restaurant, and she

---

[1]    *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2015).

assumed that appellant would take D.W. to the mall. M.V. felt comfortable letting D.W. go with appellant by herself, particularly because D.W. had a cell phone. M.V. had "pretty constant" phone communication with both appellant and D.W. while they were gone, during which she learned that appellant had taken D.W. to get a manicure. But after they had been gone for approximately two hours, the communication stopped, and M.V. wondered what was taking so long. She tried calling both appellant and D.W., but neither one of them answered their phones. After about twenty or thirty minutes, M.V. finally spoke with D.W., who told her that they were on their way to Main Event.

Appellant dropped D.W. off at Main Event around 3:00 or 4:00 in the afternoon. Appellant was supposed to go bowling with M.V. and her daughters, but he told her that he did not feel like bowling and that he was going to go home. M.V. spoke with appellant in his car, and she testified that he seemed nervous and that there was an open container of beer in his car. He also told her, "She's not ready," and when M.V. asked him what he meant by that, appellant told her to talk to D.W. about it. M.V. then took D.W. aside and asked her what appellant meant. D.W. started crying and told M.V. that appellant had taken her to his apartment and touched her inappropriately. M.V. immediately took D.W. to the hospital for a sexual assault exam. After the incident, appellant called M.V. and asked her if she was going to speak to the police.

3

D.W. testified that when appellant picked her up on the day of the incident, he asked her if she wanted to go to the mall or to get her nails done, and she chose the nail salon. After D.W.'s nails were finished, appellant told her that he had been communicating with her mother and that M.V. told him to take D.W. to his apartment so she could take a nap because she had been awake all night with friends at a slumber party. D.W. thought this was odd, but she "went along with it." On the way to his apartment, appellant stopped by two different gas stations, purchased a beer at each, and drank the beers while driving.

When they arrived at appellant's apartment around 2:00 in the afternoon, he told D.W. to be quiet and that he "was going to sneak [her] in." Although she still had misgivings, D.W. went inside his bedroom and lay down on his bed. D.W. pretended to sleep while appellant went into the adjoining bathroom. When he came out of the bathroom, appellant sat down next to her on the bed and asked D.W. if she wanted a massage. Despite D.W.'s response that she did not want a massage, appellant began giving her one anyway. Appellant then took off D.W.'s clothes and began touching and kissing her breasts, arms, stomach, and legs. Appellant said that D.W. "wasn't ready" many times during the incident. Appellant then reached under D.W.'s panties and touched "inside" her vagina with his finger. D.W. testified that this caused her pain and discomfort and that she cried and repeatedly told appellant to stop.

4

Eventually, appellant stopped and they both got dressed. Appellant then drove D.W. to Main Event, and during the ride there, he told her that she "wasn't ready" and that she should not tell her father about what had happened. D.W. went inside Main Event while her mother spoke with appellant, and M.V. returned and appeared worried and mad. M.V. asked what had happened, and D.W. told her "part" of what had occurred. D.W. then went to the hospital and spoke with a nurse about the incident. The nurse then conducted a physical exam and took DNA samples. D.W. testified that the physical exam felt "really uncomfortable."

Susan Spjut, a forensic nurse, conducted the sexual assault exam of D.W. on the day of the incident. D.W. was "calm and cooperative" at the time of the exam. During the patient history, D.W. told Nurse Spjut the following:

> I said I was really tired. [Appellant] said that my mom said that I should go back to his place and take a nap. I said I didn't want to. He kind of, like, snuck me in. He led—he had me lay down on his bed. It was really weird. He laid down right beside me. He said he wasn't going to take his clothes off, but I guess he did.

> He had lotion, he rubbed my back. He took off my clothes. I tried to put them back on. It was really weird. He was touching me, both private areas, my boobs, hands, kissing, my vagina with his fingers inside. I said I wanted to go home. I said it, like, crying. I said stop many times.

Nurse Spjut collected D.W.'s clothing and swabs of her breasts, her vagina, and her anus for DNA testing. Nurse Spjut testified that taking a shower, using the restroom, or wiping the vaginal area can "wash away some evidence," but D.W.

indicated that she had not washed in between the time of the incident and the time of the sexual assault exam.

Nurse Spjut also testified that she does not expect to see injury to the female sexual organ when conducting a sexual assault exam and that injury is "not that common." D.W. had "normal" physical and genital exams, but it is also normal for there to be no "medical findings of abuse." According to Nurse Spjut, "very few people" who have been sexually assaulted have injury, and thus D.W.'s "normal" exam results were still consistent with her disclosure of digital penetration. Nurse Spjut would not expect to find "medical evidence or trauma to the female sexual organ" in digital penetration cases involving a single finger.

On cross-examination, Nurse Spjut testified that D.W. did not express feeling any pain or discomfort during the sexual assault exam and that she would have recorded that information if that had been the case. Because D.W. did not wash herself after the incident, Nurse Spjut agreed that "if there were DNA material placed in her vagina, it should still be there" at the time of the sexual assault exam.

Robin Freeman testified that while she worked at the Harris County Institute of Forensic Sciences, she analyzed the DNA samples taken during D.W.'s sexual assault exam. Freeman testified that both the breast and anal swabs contained a DNA profile consistent with appellant's DNA profile and appellant could not be

6

excluded as a major contributor of the DNA in the breast sample and could not be excluded as the sole contributor of DNA in the anal sample.

The DNA on the vaginal swab was consistent with D.W.'s DNA profile, which Freeman testified was not unusual since the sample was from D.W.'s vaginal area. On cross-examination, Freeman testified that appellant was not the "originator" of the DNA evidence found on the vaginal swab. She agreed that in cases of digital penetration of a vagina, it would not be unreasonable to find a defendant's DNA present in the swab, "but because it's the orifice of [the complainant], it might mask them so you might get more from the vaginal vault than from the individual that had a hand or a finger." "Depend[ing] on the situation," there might or might not be evidence of a "minor contributor" to the DNA mixture in that case. Freeman also testified that just because someone touches something, that does not mean that they left a "dectectable amount" of DNA behind. DNA evidence can also rub off if it comes into contact with an article of clothing. When asked whether just because there is no evidence of male DNA on a vaginal swab that means appellant did not touch D.W.'s vagina, Freeman stated that it means she "didn't obtain his DNA on that item," but he could still have touched D.W.'s vagina.

### B.     *Procedural Background*

The State filed a motion in limine the Friday before trial was scheduled to begin, seeking to exclude any discussion of allegations of sexual assault that D.W. had made in Montgomery County against three of her classmates that had been no-billed or dismissed.  At a pre-trial hearing, in response to questions from both the trial court and trial counsel, one of the prosecutors explained that she was not sure if the allegations had been no-billed or dismissed, but she knew that that case was "not going forward."  The trial court stated its belief that "prior allegations against other individuals are probative."  The other prosecutor explained that D.W.'s "recollection of the event is almost zero," which explains why the Montgomery County District Attorney decided not to proceed with the case.  She also stated that M.V. informed her that she had received a letter from the Montgomery County District Attorney "stating they would not be able to go forward for lack of evidence."  The trial court again stated that it believed these allegations were admissible, and it asked trial counsel if he had knowledge of the allegations.  Trial counsel responded that he did not, and he did not move for a continuance to investigate the allegations.  On the second day of trial, prior to D.W.'s testimony, the State re-urged its motion in limine concerning D.W.'s other sexual assault allegations, and the trial court stated that because there was no evidence the allegations were false, evidence of the allegations was inadmissible.  Trial counsel

did not request a continuance or ask to question D.W. about the allegations, nor did he insist that the trial court hold a bench conference on the record concerning the allegations.

At the close of evidence, the trial court presented an informal copy of the charge to the parties and asked if there were any objections. The State objected to the inclusion of an instruction on the lesser-included offense of indecency with a child, arguing that there was no evidence that, if appellant committed an offense, he committed only the lesser offense of indecency with a child. Trial counsel argued that the evidence presented at trial did warrant the submission of the lesser-included offense instruction, but the trial court disagreed and informed the parties that the instruction would be removed from the final charge. At the formal charge conference, the charge did not include a lesser-included offense instruction, and trial counsel did not object on this basis. The jury found appellant guilty of the charged offense of aggravated sexual assault of a child.

At the punishment phase, the State called Dr. Danielle Madera, a staff psychologist at the Harris County Children's Assessment Center, to testify about topics such as "grooming" of sexual assault victims and sex-offender treatment programs. The State asked Dr. Madera about "the only sure way that a sex offender will not reoffend," and Dr. Madera replied, "Lock them up in prison."

Trial counsel did not object to this testimony. The State and Dr. Madera then had the following exchange:

[The State]: And are there factors or things that affect whether or not [a sex offender] is likely to reoffend?

[Dr. Madera]: Yes.

[The State]: And what are those?

[Dr. Madera]: Access to children, access to fantasy materials, pornography, movies, magazines, anything that will continue the offense cycle.

[The State]: And what about whether or not they're ready to take responsibility, does that affect their likelihood to reoffend?

[Dr. Madera]: Yes.

[The State]: How?

[Dr. Madera]: If there's any hope of any sort of treatment helping them to control the urge to offend—because there's no cure for this. So they're always going to have that sexual attraction [to] children. So the only hope of controlling that will be to first, you know, admit that responsibility for their actions and work on their thoughts and how to control their behaviors.

Trial counsel also did not object to this testimony.

On cross-examination of Dr. Madera, however, trial counsel asked whether she had ever met with or interviewed appellant. Dr. Madera responded that she had not, and she agreed that she could not say what was going on in appellant's mind, but that she was "talking generally about needing to accept responsibility." Dr. Madera testified that she was not saying that defendants who insist that the

10

State prove the allegations against them in a trial are denying responsibility for their actions. She agreed with trial counsel that no conclusion regarding accepting or denying responsibility could be drawn from a defendant's insistence on a trial.

At the punishment phase, the State also presented evidence that appellant had several prior convictions, including one for misdemeanor theft, one for possession of marijuana, two for misdemeanor assault, and three for misdemeanor driving while intoxicated. The State also presented testimony from appellant's ex-wife, who testified that appellant often became violent with her during the course of their relationship, especially when alcohol was involved, and from appellant's underage former step-daughters, who testified that appellant had sexually assaulted them, that he made threats against them and their mother, and that appellant would often be under the influence of alcohol. Charges were filed against appellant with regard to the abuse of one of his former step-daughters, but the charges were ultimately dismissed due to the complainant's young age and the fact that she had a learning disability which would have made it difficult for her to testify.

During argument at the punishment phase, trial counsel stated that during its deliberations the jury would consider D.W., "a young lady, 13 years old and innocent," and that it was appropriate that the jury consider D.W. when making a punishment decision. Trial counsel acknowledged that he would consider her and her testimony if he were in the jury's position. Trial counsel also stated that the

11

jury, through its punishment verdict, would punish appellant after having already found him guilty, that it would provide "some level of retribution" for D.W. and her family, and would deter future similar misconduct from other individuals who "prey" on children. Trial counsel also argued mitigating circumstances, acknowledging appellant's prior offenses and bad acts against his ex-wife and former step-daughters, but pointing out their testimony that his bad conduct often occurred under the influence of alcohol, a factor that was also present in the underlying case.

Ultimately, the jury assessed punishment at confinement for life. Appellant did not file a motion for new trial, and this appeal followed.

## Ineffective Assistance of Counsel

In his first issue, appellant contends that his trial counsel rendered constitutionally ineffective assistance of counsel. Specifically, appellant contends that his trial counsel was ineffective because he failed to review a notice from the State that D.W. had made allegations of sexual abuse against other individuals that were ultimately no-billed; he failed to request a continuance to investigate these allegations on three separation occasions; he failed to request a record of a bench conference concerning D.W.'s no-billed allegations; he failed to object to the lack of a lesser-included offense instruction in the jury charge; he failed to object to expert testimony presented during the punishment phase concerning the best

12

treatment for sex offenders and testimony that violated his right not to testify by commenting on his post-arrest silence; and he made an argument during the punishment phase that mirrored the State's argument.

### A. Standard of Review

To establish that trial counsel rendered ineffective assistance, an appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient, and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010); *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008). The appellant's failure to make either of the required showings of deficient performance and sufficient prejudice under *Strickland* defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The appellant must first show that his counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson*

*v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound trial strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *see Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness).

In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallett*, 65

S.W.3d at 63; *see also Massaro v. United States*, 538 U.S. 500, 505, 123 S. Ct. 1690, 1694 (2003) ("If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. The trial record may contain no evidence of alleged errors of omission, much less the reason underlying them.") (internal citations omitted). Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and concludes that counsel was ineffective. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836.

**B.    *Alleged Instances of Ineffective Assistance***

      **1.    *Conduct relating to complainant's no-billed allegations of sexual assault against other individuals***

On the Friday before the trial began, the State filed a motion in limine seeking to prevent appellant from cross-examining D.W. about sexual assault allegations that she had made against three boys in Montgomery County that were ultimately no-billed by the grand jury. Appellant argues that his trial counsel rendered ineffective assistance by failing to review the State's motion in limine concerning the allegations prior to a pre-trial conference, failing to request a

15

continuance to investigate "this potential *Brady* evidence" on three different occasions,[2] and failing to have a bench conference concerning these allegations placed on the record. We address these instances of alleged ineffectiveness together.

The trial court ruled that the evidence of D.W.'s additional sexual assault allegations was inadmissible because appellant could offer no proof that the allegations were false. As the State points out, a trial court does not abuse its discretion by excluding evidence that the complainant in a sexual assault case made sexual assault allegations against other individuals when there is no evidence that the allegations were false. *See Lape v. State*, 893 S.W.2d 949, 955–56 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd); *Hughes v. State*, 850 S.W.2d 260, 262–63 (Tex. App.—Fort Worth 1993, pet. ref'd) ("When there is no evidence that the complainant made false accusations, any evidence concerning the accusations is inadmissible."); *see also Lopez v. State*, 18 S.W.3d 220, 226 (Tex. Crim. App. 2000) ("Without proof that the prior accusation was false or that the two accusations were similar, the evidence fails to have any probative value in impeaching [the complainant's] credibility in this case."); *cf. Thomas v. State*, 669

---

[2] Specifically, appellant argues that trial counsel should have moved for a continuance after he received the State's "untimely and insufficient" notice of D.W.'s allegations, at the pre-trial conference at which the parties discussed the State's motion in limine concerning the allegations, and during trial after the trial court ruled that the evidence of the allegations was inadmissible.

S.W.2d 420, 423 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) ("Appellant has shown by the testimony of complainant and her mother that at least one of the prior accusations was false. Although the false accusations may have indicated emotional or psychological trauma rather than a lack of trustworthiness, the jury should have been allowed to hear the testimony and decide on the issue of the complainant's credibility.").

Here, at the pre-trial conference at which the parties discussed the State's motion in limine, one of the prosecutors stated that D.W.'s Montgomery County allegations had been either no-billed or dismissed. The other prosecutor gave a few details about the allegations and stated that D.W.'s "recollection of the event is almost zero," and offered that as an explanation for why that case did not proceed. The prosecutor also stated that M.V. had received a letter from the Montgomery County District Attorney's Office informing her that "they would not be able to go forward [on the case] for lack of evidence." Appellant did not present any evidence, either pre-trial or when the trial court revisited the issue before D.W.'s testimony, that D.W.'s allegations against the boys in Montgomery County were false. Appellant also did not file a motion for new trial in this case. He has therefore never presented any evidence at any point in this proceeding that D.W.'s

17

allegations of sexual assault in Montgomery County were false.[3]  The fact that M.V. allegedly received a letter informing her that the case against the boys D.W. accused could not be prosecuted for lack of evidence is not evidence that no sexual assault offense against D.W. occurred or that she made false allegations.  *See Prevo v. State*, 778 S.W.2d 520, 524 (Tex. App.—Corpus Christi 1989, pet. ref'd) ("That there was no physical evidence of a prior rape does not mean that the rape did not occur, nor does it mean that the complainant lied and falsely accused another.").

Even if an objectively reasonable attorney would have read the State's motion in limine prior to the pre-trial conference on the motion, would have moved for a continuance to investigate the allegations, and would have ensured that a bench conference concerning the admissibility of the allegations was on the record, because appellant has not established, either in the trial court or on appeal, that the allegations were false and, thus, evidence of the allegations was admissible, he cannot establish that a reasonable probability exists that the result of the proceeding would have been different but for trial counsel's conduct.  *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812; *see also Lape*, 893 S.W.2d at 955–56 (holding that, in absence of evidence that complainant's sexual assault allegations against other man were false, trial court

_____

[3]  In his appellate brief, for example, appellant refers to this evidence as "potential *Brady* evidence."  He points to no evidence that D.W.'s allegations were false.

did not abuse its discretion in determining that evidence of other allegations was irrelevant and inadmissible). Appellant has therefore failed to establish prejudice with respect to trial counsel's omissions concerning D.W.'s allegations against other individuals. We hold that trial counsel did not render ineffective assistance with regard to these allegations.

### 2. *Failure to object to expert testimony during punishment*

Appellant contends that his trial counsel rendered ineffective assistance by failing to object to testimony from Dr. Madera at the punishment phase that the "'only sure way' to make sure a sex offender will not reoffend is to 'lock them up in prison'" and testimony that "the only hope of controlling a sex offender is requiring him to admit responsibility," which violates his Fifth Amendment right not to testify.

Trial counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel. *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd). Code of Criminal Procedure article 37.07. section 3(a)(1) provides that during the punishment phase, "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2014). The trial court has wide latitude in admitting relevant evidence at the punishment phase, as long as its admission is otherwise permitted

by the rules of evidence. *Muhammad v. State*, 46 S.W.3d 493, 498–99 (Tex. App.—El Paso 2001, no pet.). A jury deciding punishment "must be able to 'tailor the sentence to the particular defendant.'" *Ellison v. State*, 201 S.W.3d 714, 722 (Tex. Crim. App. 2006) (quoting *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)). For example, both the State and the defense are permitted to present evidence on issues such as a defendant's suitability for community supervision. *See id.*; *Muhammad*, 46 S.W.3d at 505 ("We find it clear that the legislature intends the widest sweep of relevant evidence to be considered by the jury in determining punishment. We can see no logical reason for excluding evidence on suitability for probation from that deliberation . . . .").

Appellant argues that Dr. Madera's testimony that the only sure way that a sex offender will not reoffend is to "[l]ock them up in prison" is inadmissible because it "decided the issue of punishment for the jury." However, expert testimony on issues such as suitability for probation and recidivism is admissible as a proper consideration for sentencing under article 37.07. *See Ellison*, 201 S.W.3d at 722; *Muhammad*, 46 S.W.3d at 505; *cf. Peters v. State*, 31 S.W.3d 704, 722–23 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding that trial court reversibly erred in excluding expert defense evidence concerning recidivism rates and likelihood of re-offending). This testimony does not invade the province of the jury. *See* TEX. R. EVID. 704 ("An opinion is not objectionable just because it

20

embraces an ultimate issue."); TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (providing that at punishment phase, "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing"). Because Dr. Madera's testimony on this subject was admissible, we hold that trial counsel did not render ineffective assistance when he failed to object to this testimony. *See Oliva*, 942 S.W.2d at 732.

Appellant also contends that trial counsel was ineffective for failing to object to Dr. Madera's testimony that the only hope of controlling a sexual attraction to children is for the offender to "admit that responsibility for [their] actions and work on their thoughts and how to control their behaviors" because this testimony commented on his post-arrest silence and violated his Fifth Amendment right not to testify. *See Johnson v. State*, 83 S.W.3d 229, 231 (Tex. App.—Waco 2002, pet. ref'd); *see also Doyle v. Ohio*, 426 U.S. 610, 618, 96 S. Ct. 2240, 2245 (1976) (holding that use of defendant's silence at time of arrest and pre-*Miranda* warnings for impeachment purposes violated due process clause of Fourteenth Amendment).

Here, Dr. Madera and the State had the following exchange:

[The State]: And are there factors or things that affect whether or not [a sex offender] is likely to reoffend?

[Dr. Madera]: Yes.

[The State]: And what are those?

21

| [Dr. Madera]: | Access to children, access to fantasy materials, pornography, movies, magazines, anything that will continue the offense cycle. |
|---|---|
| [The State]: | And what about whether or not they're ready to take responsibility, does that affect their likelihood to reoffend? |
| [Dr. Madera]: | Yes. |
| [The State]: | How? |
| [Dr. Madera]: | If there's any hope of any sort of treatment helping them to control the urge to offend—because there's no cure for this. So they're always going to have that sexual attraction [to] children. So the only hope of controlling that will be to first, you know, admit that responsibility for their actions and work on their thoughts and how to control their behaviors. |

Trial counsel did not object to this testimony.

Trial counsel did, however, cross-examine Dr. Madera about this testimony. In response to trial counsel's questions, Dr. Madera admitted that she had never met with or questioned appellant, that she could not speak to what he was or was not thinking, and that she was "talking generally about the need to accept responsibility." She testified that she was not saying that a defendant who insisted on having a trial was denying responsibility for his behavior. She agreed that no conclusion with regard to accepting responsibility could be drawn from the defendant choosing to go to trial.

22

On this record, we cannot say that trial counsel's failure to object to Dr. Madera's initial testimony concerning sex offenders accepting responsibility for their actions was not based on sound trial strategy. *See Bone*, 77 S.W.3d at 835 (noting that we do not speculate regarding trial counsel's strategy); *Mallett*, 65 S.W.3d at 63 (holding that, to prevail on ineffective assistance claim, appellant must bring forward record affirmatively demonstrating that counsel's action was not based on sound trial strategy). Trial counsel elicited testimony that Dr. Madera had not met with appellant and thus was testifying only in general terms regarding a sex offender accepting responsibility for his actions. We hold that appellant has not demonstrated that trial counsel's failure to object to Dr. Madera's testimony fell below an objective standard of reasonableness. *See Thompson*, 9 S.W.3d at 814 ("The record in the case at bar is silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay. Therefore, appellant has failed to rebut the presumption this was a reasonable decision."); *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("There may have been strategic reasons for counsel to decline to object even to inadmissible evidence.").

### 3. Trial counsel's punishment argument

Appellant also argues that his trial counsel's argument during the punishment phase did not advocate for him but instead aided the State.

Specifically, appellant complains of trial counsel's statements that the jury must consider the "innocent" complainant, D.W., as he would if he were in the jury's position; that appellant should be punished and that one of the functions of punishment was to provide "some level of retribution" for D.W. and her family; that the jury's punishment verdict would send a message of deterrence for people who might prey on children; and that appellant should be punished severely for his actions.

Closing argument is one of the areas of trial where trial counsel's strategy is most evident. *Thompson v. State*, 915 S.W.2d 897, 904 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). In cases involving strong evidence of guilt, attempting to mitigate punishment during argument may be the only realistic trial strategy. *Id.*; *see also Flemming v. State*, 949 S.W.2d 876, 881 (Tex. App.—Houston [14th Dist.] 1997, no pet.) ("It is plausible that counsel, after reviewing the evidence presented, concluded that the best strategy might be to appear open and honest to the jury in hopes of mitigating punishment."). Attacking the credibility of sympathetic witnesses, whether via cross-examination or during argument, runs the risk of offending the jury. *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

By the time trial counsel made his argument during the punishment phase, the jury had heard strong evidence of appellant's guilt from D.W. and M.V., and

24

the State had presented DNA evidence demonstrating that appellant's DNA had been found on swabs of D.W.'s breast and anus. During the punishment phase, the State presented evidence that appellant had been violent on numerous occasions during his marriage to his ex-wife, leaving her in fear for her safety. The State also presented evidence that appellant had sexually assaulted his underage step-daughters on numerous occasions. Appellant stipulated to several prior criminal convictions, including a conviction for theft, possession of marijuana, two convictions for misdemeanor assault, and three convictions for misdemeanor driving while intoxicated. Several witnesses testified concerning appellant's propensity to become violent when he started drinking.

On this record, it was plausible for trial counsel to appear open and honest by acknowledging appellant's guilt for the charged offense and the need for punishment. It was also a reasonable strategy for counsel to acknowledge the evidence against appellant and argue for mitigation, which he did by pointing out the common thread running through the testimony of the punishment witnesses that appellant had a problem with alcohol, which often led to his violent and sexually assaultive behavior. We conclude that appellant has not overcome the strong presumption that trial counsel's punishment arguments constituted sound trial strategy. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Williams*, 301

S.W.3d at 687. We hold that trial counsel did not render ineffective assistance during the punishment phase of the trial.

We overrule appellant's first issue.

## Lesser-Included-Offense Instruction

In his second issue, appellant contends that the trial court erred by failing to instruct the jury on the lesser-included offense of indecency with a child.

### A. *Standard of Review*

Code of Criminal Procedure article 37.09 provides that an offense is a lesser-included offense of a charged offense if:

(1) it is establish by proof of the same or less than all of the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006). We use the statutory elements and the facts alleged in the charging instrument to find lesser-included offenses. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007).

We employ a two-step analysis in determining whether the trial court should have given an instruction on a lesser-included offense. *See id.* First, we must

26

determine whether an offense is a lesser-included offense of the charged offense, and this is a question of law that does not depend on the evidence to be produced at trial. *Id.* This step must be capable of being performed before trial "by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense." *Id.* at 535–36.

The second step of the analysis asks whether there is evidence that supports giving the lesser-included-offense instruction to the jury. *Id.* at 536. The Court of Criminal Appeals has held that

> [a] defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense.

*Id.* (citing *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)); *see Schmidt v. State*, 278 S.W.3d 353, 362 (Tex. Crim. App. 2009) (stating that "there must be affirmative evidence to rebut the greater element, and the jury may not simply disbelieve evidence establishing the greater" charged offense to entitle defendant to lesser-included-offense instruction). In this portion of the analysis, anything more than a scintilla of evidence entitles the defendant to the instruction. *Hall*, 225 S.W.3d at 536. The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Id.*; *Williams v. State*, 294 S.W.3d 674, 681 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (stating that

"[t]here must be affirmative evidence in the record raising the lesser offense before an instruction is warranted").

The Court of Criminal Appeals has held that the test for determining whether evidence is legally sufficient and the test for determining whether to submit a lesser-included-offense instruction are "quite different." *Wasylina v. State*, 275 S.W.3d 908, 909 (Tex. Crim. App. 2009) (quoting *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005), *abrogated on other grounds by Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2009)). "The evidence could easily be legally sufficient to support a conviction for a lesser-included offense but not justify the submission of a lesser-included-offense instruction because the evidence does not show that the defendant is guilty *only* of the lesser-included offense." *See id.* at 909–10 (emphasis in original).

### B.    Appellant's Entitlement to Lesser-Included-Offense Instruction

Assuming, without deciding, that the first step of the lesser-included-offense analysis has been met and indecency with a child is a lesser-included offense of aggravated sexual assault of a child, we agree with the State that appellant cannot meet the second step of the analysis. *See, e.g.*, *Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009) ("The court of appeals reached the correct result by holding that indecency with a child is a lesser-included offense of aggravated sexual assault of a child when both offenses are predicated on the same act.").

Appellant argues that based on the evidence at trial, a rational jury could have found him guilty only of the lesser-included offense of indecency with a child because there was some evidence that he did not penetrate D.W.'s vagina. Specifically, appellant points to Freeman's testimony that the vaginal swab did not reveal the presence of appellant's DNA, Nurse Spjut's testimony that she expected appellant's DNA to be found on the vaginal swab because there was no indication that D.W. took a shower or otherwise washed herself in between the time of the incident and the time of the sexual assault exam, Nurse Spjut's testimony that D.W. did not tell her that she felt pain or discomfort during the incident, D.W.'s contradictory testimony that she did feel pain and that she told Nurse Spjut this, and no evidence of injuries to D.W.'s vagina.

The Fourteenth Court of Appeals addressed a similar argument in *Hendrix v. State*. 150 S.W.3d 839, 851 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). In that aggravated sexual assault of a child case, the defendant argued that the trial court erred by failing to instruct the jury on the lesser-included offense of indecency with a child because the evidence permitted the jury to find that the defendant was guilty only of indecency with a child by contact in part due to "medical testimony and records indicating normal physical examinations with no evidence of anal or oral penetration." *Id.* Our sister court rejected this argument, noting that the evidence that the defendant relied upon was "not inconsistent with

and [did] not refute the evidence of aggravated sexual assault in this case." *Id.* Both of the complainants in that case testified that the defendant penetrated their mouths, anuses, and sexual organs with his sexual organ, and that testimony was "not subject to different interpretations." *Id.* The Fourteenth Court also pointed out that the State presented expert medical testimony that a "normal exam was not inconsistent with" the type of abuse that the complainants had described. *Id.* The court thus concluded that while there may have been evidence to support the defendant's claim that he committed the offense of indecency with a child, there was "no conflict raised by the evidence that would enable a rational finder of fact to conclude that appellant was guilty *only* of the lesser included offenses of indecency with a child by exposure or by contact." *Id.* (emphasis in original). The court held that the trial court did not err in denying the requested lesser-included-offense instruction. *Id.*

This case is factually analogous to *Hendrix*. Here, D.W. unequivocally testified that appellant put his finger inside her vagina. Although Nurse Spjut testified that D.W. was "calm and cooperative" during the sexual assault exam and that D.W. did not express any pain or discomfort during the exam, she also testified that D.W. told her during the history portion of the exam that appellant touched her vagina. Nurse Spjut also testified that when conducting a sexual assault exam, she does not expect to see injury to the sexual organ and that such

30

instances are "not that common." Nurse Spjut agreed that D.W.'s physical and genital exams were "normal" and that it is normal to have no medical findings of abuse because "very few people" who have been sexually assaulted have injury. She testified that the normal medical exam was consistent with D.W.'s sexual assault disclosure and that she does not expect to find medical evidence or trauma to the female sexual organ in cases of digital penetration.

In arguing that a lesser-included-offense instruction was warranted, appellant relies heavily on the fact that the vaginal swab taken during the sexual assault exam did not reveal the presence of his DNA, which, he argues, one would expect to find if he had penetrated D.W.'s vagina with his finger and without using a condom. Nurse Spjut agreed that because D.W. did not shower or wash herself or use the restroom in between the incident and the medical exam, "if there were DNA material placed in [D.W.'s] vagina, it should still be there."

Freeman, who conducted the DNA analysis on the swabs collected from D.W.'s physical exam, testified that the DNA profile on the vaginal swab was consistent with D.W. and was not consistent with appellant. Freeman also testified, however, that while one might expect to see DNA material belonging to someone who digitally penetrates a vagina, because "it's the orifice of that individual, it might mask them so you might get more [DNA] from the vaginal vault than from the individual that had a hand or a finger." She testified that the

presence of the DNA of a defendant as a "minor contributor" to a DNA mixture in a case of digital penetration "[d]epends on the situation." Freeman also testified that not every touch yields a "detectable amount" of DNA, so someone might touch a place but not deposit enough DNA to be detected by the DNA tests. Freeman also had the following exchange with the prosecutor:

> [The State]: In a hypothetical situation, just because there's not male DNA, the defendant's DNA on that vaginal swab, does that mean he didn't touch her vagina?
>
> [Freeman]: It means that I didn't obtain his DNA on that item.
>
> [The State]: But he still could have touched her there?
>
> [Freeman]: Yes.

As in *Hendrix*, the medical testimony in this case is not inconsistent with the allegations that appellant penetrated D.W.'s vagina with his finger. *See* 150 S.W.3d at 851. There is no conflict in the evidence that would enable a rational jury to find that appellant was guilty only of the lesser-included offense of indecency with a child. *See id.*; *see also Schmidt*, 278 S.W.3d at 362 (stating that "there must be affirmative evidence to rebut the greater element, and the jury may not simply disbelieve evidence establishing the greater" charged offense to entitle defendant to lesser-included-offense instruction); *Wasylina*, 275 S.W.3d at 909–10 ("The evidence could easily be legally sufficient to support a conviction for a lesser-included offense but not justify the submission of a lesser-included-offense instruction because the evidence does not show that the defendant is guilty *only* of

the lesser-included offense.").  We hold that the trial court did not err by refusing

to include an instruction on the lesser-included offense of indecency with a child.[4]

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.

Do not publish.  TEX. R. APP. P. 47.2(b).

---

[4]    Because we hold that the trial court did not err by refusing to instruct the jury on the lesser-included offense of indecency with a child, we also hold that even if trial counsel did not object to the trial court's refusal, as appellant claims, this failure to object did not constitute ineffective assistance of counsel, as appellant was not entitled to such an instruction.  *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984) (holding that, to establish ineffective assistance, appellant must also demonstrate prejudice—that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).